Midland Heights Homes, Appellant, *v.* Commonweath of Pennsylvania, Pennsylvania Human Relations Commission, Appellee.

Argued January 7, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Joseph M. Stanichak,* for appellant.

*Katherine Hagg Fein,* Assistant General Counsel, with her *Sanford Kahn,* General Counsel, for appellee.

OPINION BY JUDGE MENCER, March 7, 1975:

This is an appeal from a January 28, 1974 final order of the Pennsylvania Human Relations Commission (Commission), directing Midland Heights Homes (Midland), an association owning and managing an apartment complex in Midland, Pennsylvania, to cease unlawful discriminatory practices in violation of Section 5(h) of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §955(h) (Supp. 1974-1975).[1] The Commission also ordered Midland to

---

1. "Section 5. Unlawful Discriminatory Practices.—It shall be an unlawful discriminatory practice . . .:

     . . . .

     "(h) For any person to:

     "(1) Refuse to . . . lease . . . or otherwise to . . . withhold commercial housing from any person because of the race [or] color . . . of any prospective owner, occupant or user of such commercial housing. . . ."

undertake certain specific affirmative action to effectuate the purposes of the Act.

On March 18, 1970, Christine Slappy filed a complaint with the Commission charging Midland with refusing to rent an apartment to her because of her race. Ms. Slappy is of the black race. Midland filed an answer specifically denying the charge and asserted that its refusal to rent an apartment to complainant was because of her poor credit rating.

On April 26, 1973, a hearing was held before three members of the Commission. Testimony was received in support of the complaint from Ms. Slappy, Florence Waite, Manager of the Credit Bureau of Beaver County, William T. Leavell, a member of the Commission, and Daryl Preffer, a compliance specialist with the Commission. Midland offered one witness, Eston G. Maple, who is the manager and secretary of Midland. The testimony was contradictory both as to whether there was a suitable apartment available at the times Ms. Slappy applied and as to whether Midland's refusal to rent her an apartment was because she was a member of the black race or because of her unfavorable credit rating. The Commission chose to believe and accept the testimony of the complainant and her witnesses and made a determination that Midland had engaged in an unlawful discriminatory practice.

As stated in Section 10 of the Act, 43 P.S. §960 (Supp. 1974-1975), our scope of review is governed by the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, *as amended,* 71 P.S. §1710.1 et seq., whereby we are to determine whether the Commission's adjudication "is not in accordance with law" or whether "any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence." *See Wilkinsburg School District v. Pennsylvania Human Relations Commission,* 6 Pa. Commonwealth Ct. 378, 295 A.2d 609 (1972).

Although on this record, we, if we had been the fact-finders, might have reached a contrary determination, nevertheless, we must conclude that there is sufficient substantial evidence to support the Commission's findings of fact and conclusions of law.

Ms. Slappy testified that she applied for a three- or four-room apartment in Midland Heights Homes during December 1969 and her application was refused because the Credit Bureau of Beaver County reported to Midland that she had three overdue accounts owing to area creditors. She further testified that within a few days thereafter she made payment of these overdue accounts and reapplied to Midland for an apartment. Midland then offered her an apartment in the black section of the apartment complex but falsely informed her that there were no available apartments in the predominantly white section of Midland Heights Homes.

This assertion that Midland Heights Homes was segregated on the basis of race was corroborated by the testimony of witnesses Leavell and Preffer and was in substance admitted by Midland's manager. Restricting black persons to a specific section or area of a housing project and refusing to rent black persons available apartments in the areas reserved for persons of the white race is a clear violation of the Act. *Speare v. Pennsylvania Human Relations Commission,* 16 Pa. Commonwealth Ct. 502, 328 A.2d 570 (1974), *Chester Housing Authority v. Pennsylvania Human Relations Commission,* 9 Pa. Commonwealth Ct. 415, 305 A.2d 751 (1973), *rev'd. on other grounds,* —— Pa. ——, 327 A.2d 335 (1974).

Testimony in the record discloses that as of March 1970 Midland restricted black persons to buildings numbered 65 and 66 which had ten apartments occupied by blacks and one apartment vacant. Contrast this with the testimony that there were but two apartments occupied by black persons in the other 268 units making up the

Midland Heights Homes complex. Statistics alone can establish a prima facie case of racial discrimination. *Turner v. Fouche*, 396 U.S. 346, 90 S. Ct. 532, 24 L.Ed. 2d 567 (1970). This principle underlies our Supreme Court's decisions in *Chester Housing Authority v. Pennsylvania Human Relations Commission, supra,* and *Pennsylvania Human Relations Commission v. Chester School District*, 427 Pa. 157, 233 A.2d 290 (1967). The Commission's findings of fact and conclusions of law are supported by substantial evidence in the record before us, and its determination that Midland engaged in unlawful discriminatory practice is defensible on review.

Midland asserts that the Commission's final order is overly broad and legally unenforceable. We have carefully examined the order in question in the light of the pronouncements of our Supreme Court in *Chester Housing Authority v. Pennsylvania Human Relations Commission, supra,* and *Pennsylvania Human Relations Commission v. Alto-Reste Park Cemetery Association*, 453 Pa. 124, 306 A.2d 881 (1973), and find the Commission's final order to be within the Commission's broad discretionary power to make its orders effective,[2] except as to paragraph 2 of its order.

Paragraphs 2 and 25 of the Commission's final order read as follows:

"2. The Respondent shall compensate Complainant for housing and related expenses incurred in excess of those which she would have incurred if she had not been unlawfully prevented from renting a dwelling unit in Midland Heights Homes. Said expenses shall include, but are not limited to, basic rent and utilities and moving costs. Respondent and Com-

2. The Commission has authority to "take such affirmative action including but not limited to [several specific courses of action] as, in the judgment of the Commission, will effectuate the purposes of the act. . . ." Section 9 of the Act, 43 P.S. §959 (Supp. 1974-1975).

plaintiff shall furnish the Pennsylvania Human Relations Commission all documents within their control necessary for a determination by the Commission of damages under this paragraph.

. . . .

"25. The execution of the provision of [paragraph] 2 of this Order shall be held in abeyance until the Supreme Court of Pennsylvania decides the cases now pending before it in which the question of the power of the Pennsylvania Human Relations Commission to Order such damages is presented [Zamantakis v. Pennsylvania Human Relations Commission, 10 Pa. Commonwealth Ct. 107, 308 A. 2d 612 (1973) ; St. Andrews Development Co., Inc. v. Pennsylvania Human Relations Commission, 10 Pa. Commonwealth Ct. 123, 308 A. 2d 623 (1973) ; Straw v. Pennsylvania Human Relations Commission, 10 Pa. Commonwealth Ct. 99, 308 A. 2d 619 (1973) ]. This provision shall be executed only if the Supreme Court of Pennsylvania declares that the Commission has such power."

We repeat here what we stated in *Loyal Order of Moose Lodge No. 145 v. Pennsylvania Human Relations Commission,* 16 Pa. Commonwealth Ct. 433, 382 A.2d 180, 184 (1974). "[T]he award of damages by the Commission was improper. The cases cited above all hold that the Commission lacks the power to award monetary damages and those holdings are presently the law in this Commonwealth, even though the cases are on appeal to the Supreme Court. The Commission cannot ignore the law and award damages contingent upon some future action of the Supreme Court."

Accordingly, we make the following

ORDER

AND NOW, this 7th day of March, 1975, the order of the Pennsylvania Human Relations Commission, dated January 28, 1974, relative to Midland Heights Homes, is

affirmed with the exception of paragraph 2 which requires Midland Heights Homes to compensate Christine Slappy for certain enumerated items as an award of damages, which paragraph 2 is set aside and stricken.

CONCURRING OPINION BY JUDGE BLATT:

I cannot agree that the Pennsylvania Human Relations Commission (Commission) lacks the power to award monetary damages. I agree with the result reached by the majority, however, because the Commission has not based its award of damages on any proper standards previously adopted by it. See my concurring opinion in *Zamantakis v. Pennsylvania Human Relations Commission*, 10 Pa. Commonwealth Ct. 107, 308 A.2d 612 (1973).