National Railroad Passenger Corporation (Amtrak), Petitioner v. Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Respondent.

Argued February 2, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR., MACPHAIL and DOYLE.

*Theodore M. Kerrine,* for petitioner.

*Michael Hardiman,* Assistant General Counsel, with him *Robert S. Mirin,* General Counsel, for respondent.

OPINION BY JUDGE MACPHAIL, November 18, 1982:

The National Railroad Passenger Corporation (Amtrak) has appealed from an order of the Pennsylvania Human Relations Commission (HRC). The HRC concluded that Amtrak had refused to hire Houston Small (Complainant) on the basis of a *non-*

*job* related handicap in violation of Section 5(a) of the Pennsylvania Human Relations Act (Act).[1] We reverse.[2]

The findings of fact of the HRC, which are based on substantial evidence of record, establish that on or about July 19, 1977, Complainant applied with Amtrak for employment as a trackman. The duties of a trackman include repairing, replacing and maintaining railroad track and maintaining rights of way. At the time his application was filed, 100 to 150 positions for trackmen were available. Although Complainant's oral interview reflected his qualification for the work involved, a subsequent physical examination revealed that Complainant has an artificial right eye. As a result of Complainant's failure to meet Amtrak's vision standards, he was denied employment.

On July 28, 1977, Complainant filed a complaint with the HRC in which he alleged, *inter alia,* that Amtrak had rejected his employment application on the basis of his non-job related handicap and that such action constituted unlawful discrimination. Following a hearing, the HRC found that Amtrak had unlawfully discriminated against Complainant and ordered that he be offered the next available trackman position or any other position with comparable salary, benefits and promotional opportunities. It further ordered that Complainant be provided with retroactive seniority, back wages, and all other benefits to which he would have been entitled had he not been denied employment by Amtrak.[3] Amtrak subsequently perfected its appeal to this Court from the HRC's order.

---

[1] Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §955(a).

[2] This case was assigned to the author of this opinion on Septemper 14, 1982.

[3] Section 9 of the Act, 43 P.S. §959, provides that upon a finding of unlawful discrimination, the HRC shall take such affirmative action as will effectuate the purposes of the Act.

In this appeal our scope of review is to determine whether the HRC's adjudication is in accordance with law and whether the findings of fact supporting its conclusions are based on substantial evidence. *Slippery Rock State College v. Pennsylvania Human Relations Commission,* 11 Pa. Commonwealth Ct. 501, 314 A.2d 344 (1974).

Section 5 of the Act, 43 P.S. §955, provides, in pertinent part, as follows:

It shall be an unlawful practice, unless based upon a bona fide occupational qualification . . . :

(a) For any employer because of the . . . non-job related handicap or disability of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the services required.

The term "non-job related handicap or disability" is defined in Section 4(p) of the Act, 43 P.S. §954(p), as "any handicap or disability *which does not substantially interfere with the ability to perform the essential functions of the employment* which a handicapped person applies for. . . ." (Emphasis added.)

In employment discrimination cases brought pursuant to Section 5 of the Act, the complainant bears the burden of establishing a *prima facie* case which, in general, requires proof that the complainant is a member of a protected class, that he applied for a job for which he was qualified, that his application was refused and that the employer continued to seek other applicants with equal qualifications. *General Electric Corp. v. Pennsylvania Human Relations Commission,* 469 Pa. 292, 365 A.2d 649 (1976). Once the *prima facie*

case is established, the burden then shifts to the employer to establish a legitimate, nondiscriminatory reason for the denial of employment. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). The employer's burden may be satisfied by proof that the policy is necessary for the efficient and safe operation of the business. *General Electric Corp.*

It has been recognized in the case law that the factors necessary to establish a *prima facie* case in a fair employment action will vary under different factual settings. *General Electric Corp.* As applied to the present case, we think the Complainant must establish that he is handicapped, that he applied for a position for which he was otherwise qualified, that his application was rejected because of his handicap and that Amtrak continued to seek qualified applicants. *See Philadelphia Electric Co. v. Pennsylvania Human Relations Commission,* Pa. Commonwealth Ct. , 448 A.2d 701 (1982). Once having established a *prima facie* case, we agree with the HRC that the burden then shifts to Amtrak to establish that the Complainant's handicap is job related and, thus, presents a valid basis for the denial of employment. With regard to Amtrak's burden, we note that pertinent regulations provide that a handicap may be job related "if placing the handicapped or disabled . . . applicant in the job would pose a demonstrable threat of harm to the health and safety of others." 16 Pa. Code §44.4. We note that this regulation was not promulgated until 1978 and, therefore, is not applicable to this case.[4] We agree, however, that any threat to the health and safety of others which might be presented by the placement of a handicapped person in a particular job must be carefully considered in determining whether the handicap is job related.

---

[4] *See Community Country Day School v. Department of Education,* 51 Pa. Commonwealth Ct. 286, 414 A.2d 428 (1980).

Turning now to the facts of the instant case, we think Complainant has clearly established a *prima facie* case. There can be little doubt that Complainant is handicapped. We have recently approved the HRC's definition of a handicapped person, found at 16 Pa. Code §44.4, as one who "has a physical or mental impairment which substantially limits one or more major life activities." *See Philadelphia Electric Co.* As the HRC states in its brief, "Obviously, lack of sight in one eye will impose a severe barrier upon a major life function—eyesight." With regard to the other factors, the HRC's findings and the record establish that Complainant was otherwise qualified for the position, that he was denied employment because of his handicap and that Amtrak continued to seek other qualified applicants.

The crucial issue in this case, therefore, is whether or not Amtrak has met its burden of establishing that its denial of employment to Complainant was based on a *job related* handicap. We conclude that Amtrak has satisfied that burden.

The HRC's findings with regard to the impact of Complainant's handicap on his eyesight reveal that the average binocular field of vision is approximately 180 degrees. Each eye is capable of viewing a field of about 150 degrees. Of that 150 degrees, approximately 30 degrees comprise an exclusive peripheral vision area (referred to as the right or left crescent), while the remaining 120 degrees represent the central overlapping area which both eyes view. Thus, the impact of Complainant's handicap is that it eliminates sight in the right crescent, while retaining a 150 degree field of vision in the left eye. Complainant's left eye is normal with regard to other factors such as visual acuity and color vision. Moreover, Complainant, in an attempt to compensate for his reduced field of vision, uses more frequent head and eye scanning movements.

Despite this evidence which points to the fact that Complainant has adapted well and minimized the impact of his handicap, we believe that under the special circumstances presented by the position of "trackman," as well as the nature of Amtrak's business and its duty to the public, Complainant's handicap must be considered "job related." It is undisputed that one of the duties which every trackman must be qualified to perform is that of being posted as a "watchman." The duty of the watchman is to provide advance warning of approaching trains to the other trackmen in the work crew. Warnings must be given so as to enable the crew to remove themselves and their equipment from the track at least 15 seconds prior to passage of the train. Trackmen work in all types of weather, during daylight and at night and must beware of trains approaching from different directions at speeds of up to 100 miles per hour. Given this "hostile environment", Amtrak argues that it should not be required to hire a person with vision in only one eye. We agree.

Were we to affirm the action of the HRC, we would be compelling Amtrak to hire for a job which requires a full range of vision which is directly related to passenger and co-worker safety, someone who undisputably has a reduced field of vision. We do not believe that the legislature intended the provisions of the Act to be applied to require an employer to hire a physically handicapped person to perform a job where the safety of others would or even could be put in jeopardy by reason of that hiring. Furthermore, the fact that Amtrak was unable to cite specific statistics to support its policy that only persons with binocular vision be hired as trackmen is not fatal to Amtrak's case. We think it would be unreasonable in a case of this nature to require Amtrak to produce statistical information demonstrating the risk presented to co-workers and Amtrak passengers by Complainant's

handicap. *See Philadelphia v. Human Relations Commission,* 7 Pa. Commonwealth Ct. 500, 300 A.2d 97 (1973) (statistics not required to establish that females in a Youth Study Center would relate better to female supervisors). As Amtrak's medical director stated:

> There have been no studies done on this because every railroad in the country says we are not going to put somebody with defective fields of vision out on the road. We have not [sic] any control because nobody is willing to take the gamble.

Of additional importance in this case is the fact that railroads, as a matter of well settled and long standing law, are held to the highest standard regarding their duty of care to their passengers. *Cline v. Pittsburgh Railways Co.,* 226 Pa. 586, 75 A. 850 (1910). Were we to require Amtrak to hire a visually impaired employee as a trackman we would be interfering unlawfully with an employer's inherent right to establish and enforce reasonable non-discriminatory employment standards for the safe operation of its business. *See Philadelphia Electric Co.*

We conclude, therefore, that under the special circumstances presented by this case, Amtrak has established that strict adherence to its vision standards for employees is necessary for the safe and efficient operation of its business and that Complainant's handicap constitutes a "job related" handicap within the meaning of the Act.

We, accordingly, will reverse the order of the HRC.

### Order

It is ordered that the order of the Pennsylvania Human Relations Commission, dated March 3, 1981, Docket No. E-12593, is hereby reversed.

DISSENTING OPINION BY JUDGE WILLIAMS, JR.:

I must respectfully dissent, because I do not perceive that the employer has met its burden of establishing a legitimate, nondiscriminatory reason for denying employment to this complainant.

The Commission found that:

26. The Complainant was, from a medical standpoint, capable of performing all of the laboring tasks required of trackmen despite the fact that he had only one eye.

The majority nevertheless concludes that Amtrak should not be required to hire the complainant, since it has met its burden of proving that the complainant, as a trackman, "would pose a *demonstrable* threat of harm to the health and safety of others." 16 Pa. Code §44.4. (Emphasis added.) I submit that this assertion is not supported by the record. Rather than showing *demonstrable* harm, Amtrak has argued the *possibility* of harm, and the majority has transmuted that possibility into an actuality—it has replaced the above-quoted finding of fact with a determination that the complainant *cannot* perform the tasks of trackman.

Ours has never been a system of jurisprudence in which predictions and forebodings unsupported by the evidence has substituted for facts and proof; it should not now become one. It sometimes appears that the judiciary accords more deference to the fact-finding of those agencies dealing in highly technical fields than to those which regulate the more mundane areas of existence, in which every person has a modicum of expertise. I submit that in this instance that impermissible slippage into the role of fact-finder has occurred.

The majority has also voiced a concern for the employer's civil liability for accidents. I contend that that concern rests on the assumption that the com-

plainant does not have the phsyical capacity to perform the requisite tasks, again an assumption not supported by the evidence.