Emily E. Davis Winn, Appellant *v.* Trans World Airlines, Inc., Appellee.

Argued February 28, 1983, before Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

*Wendell G. Freeland,* with him *John A. Meyer, Freeland & Krontz,* for appellant.

*James A. Mollica, Jr., Meyer Darragh, Buckler, Bebenek & Eck,* for appellees.

Opinion by Judge MacPhail, June 27, 1983:

Before this Court is the appeal of Emily E. Davis Winn (Winn) from the final order of the Court of Common Pleas of Allegheny County reversing the decision of the Pittsburgh Commission on Human Relations (Commission). The Commission determined that Winn had been discriminated against on the basis of race and sex by her employer Trans World Airlines, Inc. (TWA) in three separate instances in which Winn had sought promotion. We now reverse the Court of Common Pleas.

Winn is a black female who had been employed by TWA since March of 1967.[1] At the time of the 1979 Commission hearings regarding this matter, Winn had had eight years of service with TWA.[2] Winn had, in 1974, been promoted to the management position of Quality Controller for TWA in Boston, but this position was eliminated in April of 1975 during a period of economic contraction. Winn was then placed in the non-management position of Reservations Sales Agent in Boston. She relocated to Pittsburgh in July of 1975, retaining her Reservations Sales Agent position. Winn then began to apply for a number of promotions. The denials of promotion to positions in Pittsburgh by TWA on five separate occasions were focused upon by the Commission.[3] In brief, these positions were:

---

[1] The brief filed on behalf of Ms. Winn informs us that she was furloughed from her position at TWA in September, 1980. We cannot verify the accuracy of this statement from the record in this case, the record having been closed in 1979, and such a furlough, of course, is irrelevant to the matter presently before us.

[2] Winn had been furloughed for economic reasons at various times during her years of service with TWA.

[3] Other instances of promotion denial of Ms. Winn by TWA occurred in cities other than Pittsburgh and the Commission determined that any claims of discrimination regarding these positions were outside the Commission's jurisdiction as defined by the Pittsburgh Human Relations Ordinance.

1) Senior Sales Representative in March, 1976; a position for which Winn was found to be qualified by the Commission, but for which Winn was not even interviewed by TWA. A white male with, as found by the Commission, substantially similar credentials as Ms. Winn was hired for the position.

2) Team Coordinator in April, 1977; seven positions were available and the successful candidates were all white. Winn was found by the Commission to be qualified for the job.

3) Cargo Account Executive in June, 1977; Winn testified that the Regional Manager of the Cargo Department indicated to her that he would not interview Winn for the position as it was not a job for a woman. However, the Commission also determined that Winn did not have the qualifications for the job and that the man ultimately chosen for the position had superior qualifications.

4) Field Training Instructor in February, 1977; Winn was found by the Commission to be qualified for this position, but the Commission also found that the white female chosen for the position had far superior qualifications.

5) Senior Sales Representative in April, 1978; this position was awarded to a white male although Winn was again found qualified by the Commission.

The Commission determined that Winn was unlawfully discriminated against for the Senior Sales Representative positions in 1976 and 1978, as well as for the Team Coordinator position in 1977. The Commission determined that the appropriate remedy would be a back pay award representing the difference between her salary as a Reservations Sales Agent and the salary for a Senior Sales Representative from 1976 until the date TWA ceased to employ Senior Sales Representatives in Pittsburgh.

TWA appealed to the Court of Common Pleas from the Commission's decision. In all three cases in which the Commission found unlawful discrimination,[4] the Court reversed, holding that Winn had failed to prove that she was the best able and most competent person available for the positions.

The Common Pleas Court's action in placing upon Winn the burden of proving .superior ability for the positions was clearly erroneous. The Pennsylvania Supreme Court specifically rejected such an interpretation of the fair employment laws as long ago as 1976, in the case of *General Electric Corp. v. Pennsylvania Human Relations Commission*, 469 Pa. 292, 365 A.2d 649 (1976), *rev'g*, 18 Pa. Commonwealth Ct. 316, 334 A.2d 817 (1975).[5] As the Supreme Court stated:

> [T]he choice of placing on a complainant the burden of proving the superiority of his or her abilities as part of establishing a prima facie case, on the one hand, or of requiring an employer to assert the "best able" proviso in defending a challenge to an employment decision becomes relatively easy, for we must adopt a construction which, without doing violence to the language of the statute, best promotes the goal of equal employment opportunities. We

[4] Winn did not file a cross-appeal regarding the two positions, Cargo Account Executive and Field Training Instructor, for which the Commission found Winn unqualified.

[5] While the *General Electric* case involved an interpretation of Section 5(a) of the Pennsylvania Human Relations Act (Act), Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §955(a), the Pittsburgh Human Relations Ordinance was promulgated by the Pittsburgh City Council pursuant to the authority granted by the Act, Section 12.1(a), added by Section 3 of the Act of January 24, 1966, P.L. (1965) 1523, 43 P.S. 962.1(a); *see City of Pittsburgh Commission on Human Relations v. MacBeth*, 37 Pa. Commonwealth Ct. 636, 638, 391 A.2d 1109, 1110 (1978); and *General Electric* must be considered as controlling authority.

believe that the legislature intended that it is the employer who should shoulder the burden of demonstrating that the complainant was not "best able and most competent to perform the services required."

469 Pa. at 302, 365 A.2d at 654.

In *General Electric,* the Court also addressed the question of the establishment of a prima facie case of discrimination in employment under Pennsylvania law and therein adopted the four prong test set forth by the United States Supreme Court in *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792 (1979). Our Court has applied that test in various recent cases. *See, e.g., Pennsylvania State Police v. Pennsylvania Human Relations Commission,* 70 Pa. Commonwealth Ct. 62, 457 A.2d 584 (1983); *National Railroad Passenger Corp. v. Pennsylvania Human Relations Commission,* 70 Pa. Commonwealth Ct. 62, 452 A.2d 301 (1982); *Blackburn v. Pennsylvania Human Relations Commission,* 62 Pa. Commonwealth Ct. 171, 435 A.2d 671 (1981). Under the *McDonnell-Douglas* test, a complainant makes out a prima facie case of discrimination upon the establishment of four elements: 1) he is a member of a protected minority, 2) he applied for a job for which he was qualified, 3) he was rejected and 4) the employer continued to seek applicants of equal qualifications. At this point, the complainant will have created a rebuttable presumption that the employer has engaged in unlawful discrimination. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254 (1981). At this point the *burden of production* shifts to the employer to provide evidence of a legitimate, nondiscriminatory reason for not hiring the complainant. *General Electric. See Burdine.* Upon presentation of such evidence, it then becomes an issue for "the *fact finder* [to] decide whether the rejection was discriminatory." *United*

*States Postal Service Board of Governors v. Aikens*, U.S. , , 103 S.Ct. 1478, 1482 (1983) (emphasis added). The *McDonnell-Douglas* presumption drops from the case at this point and "the factual inquiry proceeds to a new level of specificity." *Burdine*, 450 U.S. at 255. It must be emphasized that the complainant retains the burden of persuasion on the ultimate issue of whether the employer had a discriminatory motive. The complainant "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256.[6]

Having determined that the Common Pleas Court committed an error of law by placing an incorrect burden of proof upon Winn, we shall undertake an analysis of this case under the proper standards so as to ascertain whether the Court's reversal of the Commission's decision was likewise improper. Initially, we believe the Commission was clearly correct in finding that Ms. Winn had made out a prima facie case of discrimination as to all three promotion denials. Furthermore, a reading of the record discloses that the employer has offered non-discriminatory reasons in all three cases: for the 1976 senior sales representative position, TWA contended that the person hired had superior ratings from his supervisors; for the team coordinator position, TWA contended that Ms. Winn was not available for necessary evening work due to her attendance at college for her master's degree; as for the 1978 senior sales representative opening, TWA asserted that the man chosen was better qualified and

---

[6] The Court of Common Pleas in this case appears to have believed that Ms. Winn had to provide direct evidence of discriminatory intent. This she need not do. *See Aikens*, U.S. at , 103 U.S. at 1481, n.3. *See also id.* at , 103 S.Ct. at 1483 (BLACKMUN, J., concurring).

that Ms. Winn lacked the necessary interpersonal skills for the job. Thus, the preliminary analysis of *McDonnell-Douglas* was met and the resolution of the question of whether TWA acted discriminatorily lay with the fact-finder, here, the commission. *See Aikens.*

Concerning the 1976 Senior Sales Representative position, the Commission determined that the qualifications of the white male who was chosen were not significantly different from Winn's. While he was given a somewhat better rating from his supervisor than was given Ms. Winn,[7] Ms. Winn had held the managerial position of quality controller for six months longer than the man who was promoted. Despite their similar background, Ms. Winn was not even given an interview for the position.[8] The Commission chose not to believe TWA's assertion that it promoted a better qualified person and therefore inferred a discriminatory motive. Such an inference was within the Commission's prerogative and cannot be reversed.

As to the Team Coordinator position, the Commission found that twenty-seven persons applied for the seven team coordinator positions, all were interviewed, and the final selections were made from the individuals with the fifteen highest scores. Ms. Winn's score was among these fifteen. Three of the people chosen for the positions had lower scores than Ms. Winn. TWA asserted that Ms. Winn had been unwilling to work changing shifts as the job required, that she did not show enthusiasm for the position and that she was too emotional for the job. The Commission in its role as factfinder again chose to find TWA's reasons

---

[7] Out of 12 categories, the white male received the highest rating in all twelve, while Ms. Winn received the highest rating in 9 of 12, with the ratings in the other three categories being second highest.

[8] *See General Electric*, 469 Pa. at 314 n.23, 365 A.2d at 649 n.23.

pretextual. The Commission gave two reasons for its decision not to accept TWA's purported reasons for not hiring Ms. Winn. First of all, when Ms. Winn had sought to find out why she was not given a team coordinator position, in an effort to improve herself, she was told by her supervisor that the evaluation sheets had been destroyed, yet Ms. Winn's interview evaluation sheet for the position was introduced by TWA into evidence at the hearing. The Commission also determined that TWA could not substantiate its contention that Winn was unavailable for shift work and that TWA failed to make any effort to clarify the matter of Winn's availability during the interviewing process. Having found TWA's explanation not credible, the Commission acted within its discretion in determining that discrimination was the true underlying motive for TWA's failure to promote Winn to this position.

Finally, regarding the 1978 senior sales representative position, the Commission found that Ms. Winn's qualifications were essentially the same as those of the man who was chosen. TWA asserted that the man who was chosen had Team Coordinator experience. However, the Commission chose not to accept this experience as a meaningful reason for not promoting Ms. Winn since Ms. Winn had previously been discriminatorily denied a Team Coordinator position. *See General Electric*, 469 Pa. at 315, 365 A.2d at 661-62. TWA also asserted that Ms. Winn's attitude and lack of interpersonal skills were factors in its decision not to promote her. The Commission also chose, in its role as factfinder, to discount these assertions, finding Ms. Winn to have been articulate and personable in her testimony at the hearings and recognizing that her superior had always given her high marks for communication skills and personal appearance.

We also take note in regard to the general question of discriminatory intent on the part of TWA, that the

Commission was presented with the testimony of others who perceived discrimination by TWA. Again, while the evidence presented did not directly prove an intent to discriminate against Ms. Winn for these three positions, sufficient evidence was presented to permit the Commission to infer bias against Ms. Winn within the framework of the *McDonnell-Douglas* and *Burdine* analysis. While this Court may have come to a different conclusion based on the evidence presented, questions of credibility, the weight accorded to evidence and the inferences therefrom are within the province of the factfinders and all findings must be accepted by this Court where, as here, they are supported by substantial evidence. *See Midland Heights Homes v. Pennsylvania Human Relations Commission*, 17 Pa. Commonwealth Ct. 563, 566, 333 A.2d 516, 517 (1975). *Cf. Wilkens v. Unemployment Compensation Board of Review*, 69 Pa. Commonwealth Ct. 591, 593, 451 A.2d 1069, 1070 (1982) (general statement on the binding effect an agency's factfinding is to be given by this Court).

TWA in its brief to this Court contends that Ms. Winn failed to produce evidence of her alleged damages at the Commission hearings and that her complaint should be time-barred at least as to the 1976 senior sales representative position. However, TWA did not file a cross-appeal from the Court of Common Pleas decision and therefore has not preserved these issues for review. *See, e.g., Philadelphia Bond & Mortgage Co. v. Highland Crest Homes, Inc.*, 235 Pa. Superior Ct. 252, 256 n. 1, 340 A.2d 476, 479 n. 1 (1975).

We therefore reverse the Court of Common Pleas and reinstate the Commission's order.

ORDER

The order of the Court of Common Pleas in the above captioned matter, dated September 23, 1981, is hereby reversed and the order of the Pittsburgh Human Relations Commission is reinstated.

———

CONCURRING OPINION BY JUDGE CRAIG:

I concur. However, I here note that, as we currently state in *Reed v. Miller Printing Equipment*, 75 Pa. Commonwealth Ct. 360, 364, 462 A.2d 292, 294 (1983), "an employee alleging discrimination is not necessarily restricted to the specific criteria set forth in McDonnell-Douglas in order to establish a prima facie case," referring to the four-prong test in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1979).