508 A.2d 1330

Children's Hospital of Pittsburgh *v.* City of Pittsburgh Commission on Human Relations and Naomi Hale. Naomi Hale, Appellant.

Argued October 8, 1985, before Judges ROGERS and MACPHAIL, and Senior Judge BLATT, sitting as a panel of three.

*Cheryl Allen Craig,* with her, *Elaine V. Preston,* for appellant.

*Walter G. Bleil,* with him, *John H. Hill, Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY JUDGE BLATT, May 14, 1986:

The City of Pittsburgh Commission on Human Relations (Commission) and Naomi Hale (Ms. Hale) appeal the order of the Court of Common Pleas of Allegheny County which reversed the Commission's order in favor of Ms. Hale and against her employer, the Children's Hospital of Pittsburgh (Hospital).

After an evidentiary hearing, the Commission found as fact that Ms. Hale, who is black, was qualified to per-

form the job she sought, Director of the Hospital's Word Processing Department (Department), and that by virtue of her educational background, experience and employment history with the Hospital, she was the superior candidate. The Commission also found that the Hospital denied this position to Ms. Hale because of her race and it concluded, therefore, that the Hospital's failure to offer that position to Ms. Hale was in violation of Section 659.02(a) of the City of Pittsburgh Code (Code).[1]

The Hospital appealed and, upon the record made before the Commission,[2] the common pleas court reversed on the ground that substantial evidence did not support the finding that Ms. Hale was the superior candidate. The common pleas court opined that Ms. Hale was, at best, equally qualified with the successful candidate, Marlene Little (Ms. Little), a white woman from outside the Hospital's organization, and that Ms. Hale had failed to demonstrate that she would have been hired "but for" her race.

The principles governing appeals from the Commission's adjudication[3] were laid down in *General Electric*

---

[1] Section 659.02(a) of the Code pertinently provides that it shall be an unlawful employment practice "[f]or any employer to refuse to hire any person or otherwise to discriminate against any person with respect to hiring, tenure, compensation, promotion, discharge, or any other terms, conditions or privileges directly or indirectly related to employment because of race...."

[2] Where, as here, the common pleas court takes no evidence, our review is limited to determining whether or not the Commission violated constitutional rights, committed an error of law, or whether or not the Commission's necessary findings of fact are supported by substantial evidence. *Reed v. Miller Printing Equipment Division of Western Gear Corporation*, 75 Pa. Commonwealth Ct. 360, 462 A.2d 292 (1983).

[3] *See Winn v. Trans World Airlines, Inc.*, 75 Pa. Commonwealth Ct. 366, 370 n.5, 462 A.2d 301, 303 n.5 (1983) *(aff'd per curiam, 506 Pa. 138, 464 A.2d 392 (1984))*.

*Corporation v. Pennsylvania Human Relations Commission*, 469 Pa. 292, 365 A.2d 649 (1976), in which our Supreme Court adopted the rationale of the United States Supreme Court in *McDonnell-Douglas Corporation v. Green*, 411 U.S. 792 (1973). And, in construing Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e through 2000e-17, *McDonnell-Douglas* holds that a complainant meets his burden of establishing a prima facie case of discrimination by showing his membership in a protected minority, his application for a job for which he was qualified, the refusal of his application and the continued search by the employer for other applicants of equal qualifications. Upon such demonstration, the burden shifts to the employer to prove legitimate, nondiscriminatory reasons for rejecting the complainant; thereupon, the complainant must be afforded an opportunity to prove that the employer's reasons for rejecting him are actually pretextual, *i.e.*, a coverup for a racially discriminatory decision. The ultimate burden of persuasion of intentional illegal discrimination, however, remains at all times on the complainant, and it may be carried either directly by persuading the court that a discriminatory reason probably motivated the employer or indirectly by showing that the employer's explanation is unworthy of credence. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

Ms. Hale contends here that she presented a prima facie case of discrimination, and that she sufficiently demonstrated that the Hospital's alleged reason for refusing her the position of director was because of her race. As the Commission correctly concluded from its findings, which are supported by the record, Ms. Hale certainly established a prima facie case of racial discrimination. She was a member of a protected minority, she applied for a position for which she was qualified, her

application was rejected, and the employer then sought others to fill the position, selecting someone with lesser qualifications.

The Hospital was then bound to show legitimate nondiscriminatory reasons for not promoting Ms. Hale, and it asserted that she lacked skills in marketing and computers and that the position required more supervisory experience than she possessed at that time. Agreeing that such reasons, if genuine, would be sufficient to overcome the prima facie case, the Commission held, however, that these alleged reasons were pretextual, as demonstrated by its findings that, at the time the new director was appointed, the position had not yet been formally described as requiring marketing and computer skills and that no plan for developing sales of the Department's services within the Hospital had then been formulated. Moreover, the Commission further found, not inconsistent with the record, that Ms. Little (who *was* appointed) lacked the newly required marketing or computer experience. Additionally, the evidence adduced before the Commission was to the effect that no new computer was introduced coincident with the appointment of the new director, that Ms. Little, the *new* appointee, was unfamiliar with the equipment already in use and, indeed, that Ms. Hale assisted in training her in the use of the computers on hand.

The Commission also properly considered employment statistics at the Hospital to be indicative of its policies and practices with respect to minority employment. *See McDonnell-Douglas,* 411 U.S. at 805. It found that, in the area of office and clerical employees at the Hospital in 1981, there were 320 employed of whom only thirty-seven were black, and that, during the same period, there were 160 officers and managers at the Hospital of whom only four were black.

The Commission's findings may not be disturbed on appeal if in accordance with the law and supported by

substantial evidence. *General Electric Corporation.* And substantial evidence is that evidence, including the inferences therefrom, upon which a "reasonable man, acting reasonably, might have reached the decision." *St. Andrews Development Company v. Pennsylvania Human Relations Commission,* 10 Pa. Commonwealth Ct. 123, 128, 308 A.2d 623, 625 (1973). Questions of credibility, the weight to be given to the evidence, and the inferences to be drawn therefrom, of course, are within the exclusive province of the hearing agency and may not be disturbed or ignored by the courts if supported by substantial evidence. *Winn.*

We believe that the Commission's findings here are supported by substantial evidence. Ms. Hale's capabilities were evidenced by her various promotions into positions of increasing responsibility and by the testimony of her colleagues that she capably and diligently performed all of her duties. Moreover, the person she aspired to succeed had recommended her appointment. The Commission's findings that the Hospital's reasons for not appointing her were pretextual are additionally supported by the fact that the requirements of marketing, sales and computer skills were added only after she had applied for the position. The need for "computer skills" has no basis other than its expression, because no equipment with which she was not thoroughly familiar was acquired and she was experienced in the use of the equipment already installed. The asserted need for someone with more supervisory experience is clouded by the fact that Ms. Hale had often supervised the Department when the previous director was absent.

Under such circumstances, we believe that the common pleas court erred in concluding that Ms. Hale had not suffered illegal discrimination and we will, therefore, reverse its order on this issue.

In light of our ruling on the discrimination issue, we must address the alternative question posed by the

Hospital, *i.e.*, should Ms. Hale's back pay be the difference between the amount she would have received as director and her salary in her present position or should the difference between what she would have been paid had she accepted the supervisory position which the Hospital had offered to her after rejecting her for the director position and her present salary be credited against the Hospital's obligation for the back payment of salary for the director position.[4] The Commission and Ms. Hale contend that we cannot consider this mitigation issue because, they say, it was not raised by the Hospital before the Commission. Our Supreme Court, however, has ruled that "[w]hen the fact finder in an administrative proceeding is required to set forth his findings in an adjudication, that adjudication must include all findings necessary to resolve the issues *raised by the evidence and which are relevant to a decision."* *Page's Department Store v. Velardi,* 464 Pa. 276, 287, 346 A.2d 556, 561 (1975) (emphasis added). And, inasmuch as Section 555 of the Local Agency Law, 2 Pa. C. S. §555, mandates that local agency adjudications such as those of the Commission shall contain written findings of fact, we conclude that the rule of *Page's Department Store* applies here. *See also Danner v. Bristol Township Civil Service Commission,* 64 Pa. Commonwealth Ct. 470, 440 A.2d 702 (1982). Our review of the record here indicates that the Hospital did adduce competent evidence relative to mitigation before the Commission. And we conclude, therefore, that this issue was properly raised before that body. Unfortunately, our review of the Commission's adjudication in this case also indicates that it made no findings of fact relative to miti-

---

[4] The Hospital did raise this issue before the common pleas court, but due to its reversal of the Commission's order on the discrimination issue, it did not reach the mitigation question.

gation, yet, as we have noted, administrative fact finders must address in the findings all issues which have been raised by the evidence and which are relevant to a decision. Where, as here, the fact finder has failed to do this, we are precluded from exercising our appellate review.

> An appellate court or other reviewing body should not infer from the absence of a finding on a given point that the question was resolved in favor of the party who prevailed below, for the point may have been overlooked or the law misunderstood at the trial or the hearing level. In cases such as the one before us in which essential findings of fact were not made the case must be remanded so that the findings may be supplied.

*Page's Department Store*, 464 Pa. at 287, 346 A.2d at 561; *see also Danner*. We have no choice, therefore, but to remand this case to the Commisson for the necessary findings of fact and conclusions of law on the mitigation issue.

### ORDER

AND NOW, this 14th day of May, 1986, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is reversed and the case is remanded to the City of Pittsburgh Commission on Human Relations for further proceedings consistent with this opinion. Jurisdiction relinquished.

---

DISSENTING OPINION BY JUDGE ROGERS:

I vigorously dissent from the majority's action of remanding this matter to the Pittsburgh Commission on Human Relations for findings of fact and conclusions of law on what the majority calls the mitigation issue.

The issue was not raised with the Commission. The employer adduced evidence at the Commission's hear-

ings that after a white woman from another institution instead of Ms. Hale had been appointed to director of the Word Processing Department, Ms. Hale had been offered a newly created supervisory position at an advance in salary. This, the employer contends, was the occasion for mitigation. The purpose of this evidence, joined as it was by expressions by the employer's witnesses of admiration for the quality of Ms. Hale's work and of regret that she was not quite ready for the director's job, was to show that the employer entertained no animus toward Ms. Hale on account of her race. In context, it had nothing to do with mitigation of penalty. Not only did the employer's evidence lack specificity concerning the salaries for the several positions, the employer's counsel never mentioned mitigation at the hearing. After the hearing, the employer filed with the Commission a seventeen page request for findings of fact and conclusions of law and a thirty-one page memorandum of law. Neither of these documents contains one word about mitigation. Quite naturally, the Commission made no findings or conclusions on the subject and the majority unjustly chides it for not having done so.

The majority seems to say that the presence in the record of evidence which is conceivably germane to the subject of mitigation somehow makes it an issue on appeal; that it is not necessary that a litigant provide form, expression and espousal to the issue at the trial or hearing. To the contrary, Section 753(a) of the Local Agency Law, 2 Pa. C. S. §753(a), which codifies the law of the cases, provides that "party may not raise upon appeal any ... question not raised before the agency." The obvious purpose of the rule is to give the agency first opportunity to decide the issues; the Commission in this case had no such opportunity.

Moreover, the facts of this case do not support the employer's late claim for mitigation. Ms. Hale learned

on a Friday that she was not to be the new director but that she might have a newly-created supervisor's position paying more than her then position. She accepted the new position. On the Monday following, she told her superiors that she did not want the new position; that she believed that she should have been apppointed director. She was then told she must decide whether to accept the supervisor appointment on the spot; and she declined. A white woman was offered and accepted the supervisor's position later that day. On Tuesday, Ms. Hale, having thought it over, reported her willingness to accept the supervisor's position and discovered that it was no longer available. No reason is offered by the employer for its constrained time schedule for filling the new position.

The doctrine of mitigation is founded on equitable principles. In employment cases, it operates to reduce an award for loss of work by the amount of money earned by the employee in other employment or for failure of the employee to seek other work. Surely, the doctrine should work in reverse; that is, that an injured party should not be required to accept damages in an amount less than those which will make her whole in the absence of equitable reasons for their diminishment. The equities here are all against the employer. The Commission on clear evidence found that the employer's refusal to promote Ms. Hale was an act of discrimination and awarded damages for loss of the increased salary of the director's position. Do equitable principles require that her damages be diminished for refusing to accept a position different from and inferior to the one which the employer had just unlawfully denied her? I believe not.

I would vacate the order of the common pleas court and reinstate the Commission's order.