## LENTZ v. LAMPLUGH.

1. Devise to testatrix's son A. of $1000 more than one-fifth of her whole real estate, to be paid out of the remaining four-fifths to be devised to her daughters, together with a devise of the remaining four-fifths to the daughters, passes an estate to A., which is liable to sale on execution against A., although testatrix directed the land should not be sold without the consent of all her heirs.

2. Where plaintiff appeals from an award in his favour, and recovers a verdict and judgment more favourable to himself, the lien of such judgment has no relation to the date of the award.

IN error from the Common Pleas of Montgomery.

*Dec. 26.* Ejectment. Catharine Lentz died seised of the premises in question. By her will she devised "to my son John $1000 more than one-fifth of my whole real estate, to be paid out of the remaining four-fifths to be willed to my daughters."

To three of her daughters she devised by several clauses "one-fifth of my whole real estate," and to another "the remaining one-fifth of my real estate."

After disposing of her personal property, and making some provisions respecting the shares of two of the daughters, she added, "it is my will, and I so direct, that the place be not sold without the consent of all my heirs."

On the 19th Dec., 1845, the plaintiff in this action recovered an award in an action of assumpsit against John Lentz (one of the devisees in the above will) for $167.93. On the 19th of January, 1846, the plaintiff appealed and obtained a verdict for $620 on the 26th August. Judgment was entered, and the estate of Lentz sold to the plaintiff by the sheriff under an execution.

The defendants proved that on the 5th January, 1846, John Lentz had sold and conveyed his estate in the premises for a valuable consideration.

The Court (KRAUSE, P. J.) was of opinion that the interest of John Lentz was real estate and liable to sale under the judgment, and that the lien of the judgment related back to the date of the filing of the award.

*G. R. Fox*, for plaintiffs in error.—The intent of the testatrix is not carried out, if this interest may be thus sold and partition compelled by a stranger. The property plainly was intended as a home for all the children. The main question is the effect of the judgment. Unless by virtue of the Act of Assembly, it had no

relation, and by that the award was a lien only until reversed upon appeal. The meaning of the word "reversed" in this Act is "changed" or "altered," 1 S. & R. 77, even though the verdict is more favourable to the appellant: 4 Ib. 198. It was in his election to take what he had got with the benefit of a lien, or, waiving that, to have a chance for more; he chose the latter, and cannot now seek to include within a lien what had no existence at its creation: 8 W. & S. 101. That the plaintiff's appeal annuls an award, is also shown from 5 W. & S. 370; 8 Ib. 242.

*Boyd* and *Mulvany*, contrà.—The award was never reversed; on the contrary, it was confirmed and enlarged. It may well be that the additional sum recovered was no lien, as was decided in 8 W. & S. 99, with respect to costs subsequent to the appeal; but this title is good, if any part of the judgment was a lien at the date of the award.

As to the interest of John Lentz, it was clearly an estate in the land itself, otherwise no one had any estate in the one-fifth: 1 Rawle, 329.

*Jan.* 3. GIBSON, C. J.—There is little difficulty in determining that John Lentz had an estate by the will, which might have been bound by a judgment. The gift of a thousand dollars more than a fifth part of the whole real estate, was not a bequest of money, but an implied devise of land, the numerical amount being used only as a measure of quantity. John, therefore, took by implication a fifth part of the real estate, and the worth of a thousand dollars more, either in land or money, charged on the other four-fifths—it is unnecessary to say which. No power was given to sell, except by the unanimous consent of the devisees; and this shows that she intended an estate in the land, and not an interest in the price of it. The features of the case consequently bear no resemblance to those of Allison *v.* Rankin, or other cases of the stamp.

The question is, was it bound? Previous to his conveyance, a creditor had obtained an award against him under the compulsory arbitration act, which declares such an award "shall have the effect of a judgment against the party against whom it is made, and be a lien on his real estate until such judgment be *reversed on appeal*." The Act evidently contemplated reversal by the party against whom the award was to operate; and when he has reversed

it only in part, there is no difficulty in conceiving that the original lien holds for the residue. A more difficult thing would be to determine the consequences of an increase of recovery by the verdict. Would the land be bound for more than the amount of the award in the hands of an intermediate purchaser with notice that an appeal was pending; or would it be liable to execution under the statute of Westm. 2, for no more than bound it when the award was entered? These are questions which bear no relation to the present. It had not occurred to the legislature that a plaintiff might elect to reverse his own award by appeal, as a plaintiff may elect to reverse his own judgment by word of error; and as they have not provided for such a case, we are to dispose of it according to the principles of the common law. Now when a plaintiff has thus reversed his judgment, he proceeds subsequently by *venire facias de novo* or writ of *procedendo*, with exactly the same consequences and effect as if the reversed judgment had not been obtained by him, and he consequently cannot tack the lien which he had by it while it was in force, to a subsequent judgment for the same or a greater sum. He repudiates it by the reversal, and cannot claim advantage from it, for the reason that the law will not allow a party to claim in repugnant rights, or to proceed by inconsistent remedies. It will not allow him to claim by two judgments in the same action, or to reverse his judgment and still claim by it; or to say I will hold by the one and take all I can get by the other. Nothing but the force of a statute could abolish this principle; and the legislature has not applied it. An appeal like the present has the qualities of a *procedendo* and a successful writ of error combined. The appellant stakes his whole case upon success before a jury, and gives up everything else for the chance of it. Before judgment was obtained in the present appeal, the debtor had conveyed the land in contest, and consequently free from the former encumbrance. This alone is decisive of the title.

Judgment reversed.