## Colonial Trust Company (McCully, Appellant) v. Flanagan.

Argued March 24, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Thomas L. Kane,* for appellant.

*Norman R. Schade,* with him *Ira C. Houck,* of *Campbell, Wick, Houck & Thomas,* and *Rose & Eichenauer,* for appellee.

OPINION BY MR. JUSTICE MAXEY, April 13, 1942:

This is an appeal from the order of the court below dismissing exceptions of H. J. McCully, a lien creditor, to sheriff's special return on an execution. The judgment on which the execution was issued was secured by Sci. Fa. on a foreclosure of a mortgage given by J. C. Flanagan et ux. to the Colonial Trust Company. At the execution a list of liens was filed, wherein the judgment on the Sci. Fa. was shown to be a first lien representing a liquidation of the mortgage debt. The exceptant below, H. J. McCully, claims to be a creditor with a lien prior to the lien of the mortgage.

The facts giving rise to this litigation are as follows: On August 20, 1926, Joseph M. Harvey conveyed the second described property in the writ to J. C. Flanagan and Florence Mae Flanagan, his wife. On April 13, 1927, H. J. McCully filed a bill in equity against Flanagan and wife for a decree as trustees ex maleficio of certain properties, for the conveyance thereof, and an accounting of all monies received therefrom. After trial the following decree nisi was entered on January 3, 1929: "That upon this decree becoming final the defendant, J. C. Flanagan, shall pay or cause to be paid to H. J. McCulley, the plaintiff, the sum of $1,551.44, with interest from De-

cember 31, 1928, being the aggregate of the fraudulent and excess amounts found to be due by him to the said plaintiff, as they are determined in the foregoing findings of fact and set forth in the conclusions of law." Later exceptions were filed to this decree and then were dismissed. On May 12, 1930, Flanagan and wife gave to the Colonial Trust Company a mortgage covering both properties described in the writ upon which the sheriff's sale was had. In the above equity case of McCully against Flanagan appeals were taken to the Superior Court by both McCully and Flanagan. See 99 Pa. Superior Ct. 566. The Superior Court dismissed Flanagan's appeal. In the case in which McCully was the appellant the decree of the lower court was reversed and it was ordered that a decree be entered in accordance with the Superior Court's opinion. This opinion provided for the execution by Flanagan and wife of deeds conveying the two properties in question to McCully and it was also ordered that Flanagan pay to McCully the sum of $10,344.46 and that Flanagan pay all the costs. (The decree of the court below on July 10, 1930, was that Flanagan pay McCully $1,551.44 and that Flanagan execute a release for $1,000 claimed by him as a balance due on the purchase price of the Eberhart property.)

On June 16, 1932, Flanagan and wife executed a deed for the mortgaged premises to a straw man who on the same day executed a deed, without valuable consideration, for the premises, to Florence Mae Flanagan, wife of J. C. Flanagan. On January 7, 1936, McCully caused a writ of Sci. Fa. to issue against J. C. Flanagan, with notice to Florence Mae Flanagan, on the judgment he had secured against Flanagan in the equity proceedings in 1927. On April 15, 1938, Mrs. Flanagan died, leaving her husband to survive her. On April 25, 1938, H. J. McCully caused judgment to be entered against J. C. Flanagan, the surviving husband, on the Sci. Fa. proceedings, in the sum of $14,873.59. On April 26, 1938, J. C. Flanagan died.

On February 13, 1941, a writ of Lev. Fa. was issued and foreclosure proceedings was brought against Charles M. Flanagan, son of J. C. Flanagan and Florence Mae Flanagan, as owner of the mortgaged premises. In these proceedings the mortgaged premises were sold to the Colonial Trust Company, the plaintiff in the writ, for the sum of $17,000.00. On May 24, 1941, the sheriff made a special return and took the purchaser's receipt for $16,547.89, alleging that the purchaser's mortgage was the first lien on the property. On June 3, 1941, H. H. McCully filed exceptions to the special return of the sheriff on the ground that the mortgage was not the first lien on the second described property sold, but was actually subsequent in lien to the judgment of H. J. McCully against J. C. Flanagan, "which began with decree nisi and money judgment on January 3, 1929, in the sum of $1,551.44."

The writ of Sci. Fa. to revive the lien of January 7, 1936, purports to revive a lien of January 8, 1931, the date of the final decree entered by the court below, pursuant to the decision of the Superior Court (supra). Appellant contends that the lien of the larger money judgment against the defendant in the final decree in the court below "relates back to and runs from the date of the decree nisi" of January 3, 1929.

The question before us is ruled by *Eaton's Appeal,* 83 Pa. 152, where this court decided that when a plaintiff obtained an award of arbitrators in an action against defendant, which award was duly entered, and then took an appeal therefrom and while the appeal was pending another person obtained a judgment against the same defendant and judgment was later entered upon the arbitrator's award (after the appeal from it was "withdrawn by consent of both parties"), the judgment obtained by the other person while the appeal from the arbitrator's award was pending had priority. In that case Justice SHARSWOOD speaking for this court said of the decision and opinion in *Lentz v. Lamplugh,* 12 Pa. 344: "The opinion of Chief Justice GIBSON is very cogent . . . But even

if the reasoning were not thus cogent, we ought to hesitate long before overruling a case which has stood unchallenged for more than a quarter of a century." In the case thus referred to a plaintiff recovered on December 19, 1845, an award of $167.93 against John Lentz in an action of assumpsit. On January 19, 1846, plaintiff appealed and obtained a verdict for $620. On August 26, 1846, judgment was entered on the verdict and the property of John Lentz was sold by the sheriff under an execution. On January 5, 1846, Lentz had sold and conveyed his property for a valuable consideration. The lower court held that the lien of the judgment related back to the date of the filing of the award. This court held to the contrary, in an opinion by Chief Justice GIBSON, who said inter alia: "It had not occurred to the legislature that a plaintiff might elect to reverse his own award by appeal, as a plaintiff may elect to reverse his own judgment by word of error; and as they have not provided for such a case, we are to dispose of it according to the principles of the common law. Now when a plaintiff has thus reversed his judgment, he proceeds subsequently by *venire facias de novo* or writ of *procedendo,* with exactly the same consequences and effect as if the reversed judgment had not been obtained by him, and he consequently cannot tack the lien which he had by it while it was in force, to a subsequent judgment for the same or a greater sum. He repudiates it by the reversal, and cannot claim advantage from it, for the reason that the law will not allow a party to claim in repugnant rights, or to proceed by inconsistent remedies. It will not allow him to claim by two judgments in the same action, or to reverse his judgment and still claim by it; or to say I will hold by the one and take all I can get by the other. Nothing but the force of a statute could abolish this principle; and the legislature has not applied it. An appeal like the present has the qualities of a *procedendo* and a successful writ of error combined." This rule thus enunciated by Chief Justice GIBSON has not been departed from during the

ninety-three years that have since elapsed. The doctrine of stare decisis therefore applies. This doctrine "is a salutary one and should not be departed from where the decision is of long standing and rights have been acquired under it, unless considerations of public policy demand it": *Hoyt v. Martense,* 16 N. Y. 231.

The order is affirmed.