Berks County Prison, Walter G. Schipe, Warden, Petitioners *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Respondent.

Argued June 8, 1978, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*David A. Binder,* with him *John R. Ruth,* and *Marx, Ruth, Binder, Ward & Crump,* for appellant.

*Thomas F. Baker,* Assistant General Counsel, with him *Sanford Kahn,* General Counsel, for appellee.

Opinion by Judge Wilkinson, Jr., July 7, 1978:

This is an appeal by petitioners, Berks County Prison and its warden, from an order of respondent, Pennsylvania Human Relations Commission, ordering petitioners to hire complainant to fill the first available position as a guard and awarding back pay. Complainant had been employed by petitioner-prison as a prison guard from November 1969 to September 1973. In June 1972, complainant had filed a complaint with respondent alleging that he and other prison guards had suffered discrimination by petitioners on the basis of race in violation of Section 5(a) of the Pennsylvania Human Relations Act (Act), Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §955(a). This complaint was withdrawn by complainant after an adjustment was made. Complainant resigned his job in good standing in September 1973 to pursue studies toward a bachelor's degree in criminal justice administration (with a major in corrections), which he received in May 1976. As part of his studies, complainant worked as a correctional officer cadet at the State Correctional Institution at Graterford from February to August 1974. Upon completion of the cadet program, complainant applied in August 1974 for re-hire by petitioners as a guard. While during the past five years at least nine guards had been re-hired, petitioner-warden (warden), who has sole discretion as to hiring and firing, refused the application, based upon the consensus verbal recommendation of ranking staff members of the prison that complainant "lost control of himself and manhandled a number of inmates." Complainant then filed the present complaint with respondent, alleging that the refusal to re-hire him was actually in retaliation for his previous complaint, in violation of Section 5(d) of the Act, 43 P.S. §955(d).

The warden testified at a hearing he had followed his normal procedure of consultation with the assistant warden, two deputy wardens, a lieutenant and the prison physician before deciding not to re-hire complainant. The warden said complainant's complaint concerning alleged racial discrimination was not discussed. However, petitioners' chief clerk secretary testified that the assistant warden had told her that he did not feel the warden would re-hire complainant "because, as he [the assistant warden] put it to me, '[W]ould you hire someone who put a suit against you?'" The assistant warden denied making such a statement.

The warden testified that he had personal knowledge of only one incident in which complainant had allegedly lost control of himself (though the warden said that complainant had not struck an inmate even on that occasion). He said that the recommendation of the others was based primarily on their recollections of that and other incidents as there had been no formal reports of incidents kept at that time and the minimum standards for county prisons issued by the Bureau of Corrections had not been followed in this case. He stated that he had mentioned nothing concerning complainant's alleged lack of self-control to the officials at the Graterford institution before complainant was accepted for the program there, and he made no objection in a reply to an inquiry by the local police department concerning complainant's application for a gun permit in February 1973. The warden also admitted making no attempt to inquire as to complainant's performance record at Graterford despite the fact that he contacted other applicants' previous employers routinely; the warden's explanation was that complainant had been employed at the county prison only a short time previously.

The testimony of one of the deputy wardens (and, by stipulation, the other deputy warden and the lieutenant) was that the group had recommended against complainant's re-hiring because of reports it had received that the inmates were being assaulted. The lieutenant testified as to one incident in which he thought "a little too much force was used" by complainant in controlling a mentally disturbed inmate who had assaulted the lieutenant so severely that he was required to be hospitalized. The lieutenant acknowledged, however, that physical force was necessary in the situation and that he had summoned complainant for assistance specifically because of his *dependability* as well as physical condition. The prison physician testified that his recommendation against re-hiring complainant was based upon his recollection of the incident involving the mentally disturbed inmate and another incident involving an inmate who had been returned to the prison following an alleged escape attempt. The physician produced no medical records concerning either incident. The alleged escapee testified that complainant had punched him repeatedly upon his refusal to proceed to a receiving cellblock. Complainant testified that the inmate had been drunk and disorderly but that he had not struck the inmate at all; this testimony was corroborated by another officer.

A prison employee testified that he had never seen complainant use threats or violence on the inmates. He felt that the inmates thought very highly of complainant, an opinion corroborated not only by a local police officer involved in a training program at the prison but by 14 inmates or former inmates who signed a statement to that effect. Several correction officers testified that complainant never used more force than necessary to control a situation. The inmate "medic" stated that he had never heard complaints by inmates

that complainant had been rough with them, though he had heard such complaints about other officers. The brother of an inmate who allegedly was beaten by complainant testified that he had witnessed the incident and that complainant's testimony that he had not struck or threatened the inmate was accurate.

Respondent found that petitioners' reasons for not re-hiring complainant were "pure fabrications" and that a violation of Section 5(d) had occurred. It ordered, *inter alia,* that complainant be offered the first available position as a prison guard at a salary consistent with his education and experience, be promoted if qualified under generally applicable procedures employed at the prison, and be given back pay for the period from August 30, 1974 to the date of his re-employment less any wages earned by complainant during this period. This appeal followed.

Petitioners contend that their failure to re-hire complainant was a non-affirmative act and beyond the scope of Section 5(d). We disagree. Section 5(d) expressly forbids discrimination "in any manner," whether purportedly "affirmative" or not. Likewise, this broad language defeats petitioners' claim that the failure to re-hire cannot be considered "retaliatory" between employer and employee because complainant had not been an employee of petitioners for nearly a year prior to his re-application. We also disagree with petitioners' contention that complainant bore the burden of showing that he was "the best able and most competent to perform the services required" under Section 5(a) of the Act, 43 P.S. §955(a). Not only is the complaint in this case brought under Section 5(d) and not 5(a), but even under 5(a) our Supreme Court has placed such burden on the employer. *General Electric Corp. v. Pennsylvania Human Relations Commission,* 469 Pa. 292, 365 A.2d 649 (1976).

Petitioners raise the question of the propriety of admitting evidence as to a telephone conversation between a placement director at complainant's college and petitioners' assistant warden to which complainant listened on an extension line without the knowledge of the assistant warden shortly after the application for rehiring was refused. We note that the only objection made to the evidence was that it "violates the best evidence rule." Objection was withdrawn permitting the evidence to be admitted.

Accordingly, we will enter the following

ORDER

Now, July 7, 1978, the order of the Pennsylvania Human Relations Commission at Docket No. E-8210, dated March 4, 1977, is hereby affirmed.