484 A.2d 392

**Emily E. Davis WINN, Appellee,**

v.

**TRANS WORLD AIRLINES, INC., Appellant.**

Supreme Court of Pennsylvania.

Argued March 6, 1984.

Decided Nov. 29, 1984.

Reargument Granted March 25, 1985.

140

James A. Mollica, Jr., Pittsburgh, for appellant.

Wendell G. Freeland, John A. Meyer, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## ORDER

PER CURIAM.

The Court being equally divided, the Order of the Commonwealth Court is affirmed.

NIX, C.J., files an Opinion in Support of Affirmance in which LARSEN, J., joins.

LARSEN, J., files an Opinion in Support of Affirmance in which NIX, C.J., joins.

HUTCHINSON, J., files an Opinion in Support of Affirmance.

FLAHERTY, J., files an Opinion in Support of Reversal in which McDERMOTT and ZAPPALA, JJ., join.

PAPADAKOS, J., did not participate in the consideration or the decision of this matter.

## OPINION IN SUPPORT OF AFFIRMANCE

NIX, Chief Justice.

The issue in this appeal is whether the complainant in an employment discrimination case should be required as part of his or her prima facie case to prove he or she was best able and most qualified to perform the services required. For the reasons which follow I would affirm the order of the Commonwealth Court and hold that once the complainant makes out a prima facie case by satisfying the four prong test of *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), adopted by this Court in *General Electric Corp. v. Pennsylvania Human Relations Commission,* 469 Pa. 292, 365 A.2d 649 (1976), the burden of production shifts to the employer to introduce evidence of a legitimate, nondiscriminatory reason for not hiring the complainant.

### I.

Appellee Emily E. Davis Winn ("Winn"), an employee of appellant Trans World Airlines, Inc. ("TWA") since March 1967 and a Reservation Sale Agent in TWA's Pittsburgh office since July 1975, applied for the position of Senior Sales Representative in the Pittsburgh Office in March, 1976.[1] Winn, a black female, was not interviewed; a white male was hired for the position. In February 1977, Winn

1. The positions subsequently discussed were also located in TWA's Pittsburgh office.

was interviewed but not hired for the position of Field Training Instructor. The successful candidate was a white female. In April 1977 Winn applied for one of seven Team Coordinator positions. TWA interviewed her but selected four white males and three white females for the openings. Winn sought the position of Cargo Account Executive in June 1977. She was not interviewed and was told by her regional manager that a female would not be considered for the job. Finally, in April 1978 Winn again applied for the position of Senior Sales Representative. She was interviewed but TWA selected a white male.

Winn filed a complaint with the Pittsburgh Commission on Human Relations ("Commission") on April 28, 1978 charging TWA with race and/or sex discrimination for failure to advance her and seeking a promotion and back pay. Efforts to settle the dispute by conciliation failed. The Commission, after conducting public hearings in May and June of 1979, entered an order on December 16, 1980 requiring TWA to cease and desist from discriminating against its employees on the basis of sex or race and directing TWA to pay Winn the additional wages she would have earned as a Senior Sales Representative from March 1976 until the date TWA no longer employed such representatives in its Pittsburgh office.[2]

TWA appealed the Commission's decision to the Court of Common Pleas of Allegheny County, which reversed. Winn subsequently appealed to the Commonwealth Court, which reversed the Court of Common Pleas and reinstated the Commission's order. This Court granted TWA's petition for allowance of appeal.

---

**2.** The Commission concluded that Winn had been discriminated against with respect to her applications for the position of Senior Sales Representative in March 1976 and April 1978, Team Coordinator in April 1977 and Field Training Instructor in February 1977. It was determined that the salary scale for the Senior Sales Representative position would be used exclusively in computing the award. The Commission ruled that Winn was not qualified for the Cargo Account Executive job and would not have been hired absent discrimination.

## II.

In *General Electric Corp. v. Pennsylvania Human Relations Commission, supra,* this Court addressed the question whether Section 5(a) of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, § 5(a), *as amended,* 43 P.S. § 955(a), imposes upon a complainant the burden of proving as part of a prima facie case that he or she was "the best able and most competent to perform the services required." In that case the three female complainants undertook no such showing to establish their sexual discrimination complaint. The Pennsylvania Human Relations Commission ruled that where the discriminatory practice consists of a failure to evaluate a female worker's qualifications and where there is evidence that experience was not the employment criterion, the above language of Section 5(a) was not applicable. The Commonwealth Court in *General Electric* determined that the complainants failed to meet their burden of proof. Six members of this Court as then constituted joined in the reversal of the Commonwealth Court concluding that the "best able" proviso did not shift the burden of proof upon complainants to affirmatively demonstrate that they were "the best able and most competent to perform the services required" before a finding of discrimination could be made.[3] Thus for the point of law for which that case is cited by the Opinion in Support of Reversal, it is misleading to suggest that it only expressed a plurality view. On the issue here presented the *General Electric* six justices were in agreement.[4] Our jurispru-

3. Three members of the Court in *General Electric,* including this writer, would have gone further and held that an employer had an affirmative duty of eradicating a work "climate" which had the effect of "chilling" the rights of females to apply for jobs in a certain category. *General Electric Corp. v. Pennsylvania Human Rights Commission,* 469 Pa. 292, 317, 365 A.2d 649, 662 (1976) (Manderino, J., concurring, joined by Roberts and Nix, JJ.) Then Chief Justice Jones noted a dissent.

4. Many years ago Lord Coke stressed the importance of decisional constancy. That wise counsel is ignored by the Opinion in Support of Reversal in seeking to overturn a decision reached in 1976 interpreting a statute which has not been changed in language pertinent to that decision. Moreover, where the court of last resort has given an

dence cannot survive, and certainly cannot provide a solid basis for an enhanced social order, if it is made subject to every change in the composition of this Court.[5] *E.g., Commonwealth v. Crenshaw*, 504 Pa. 33, 470 A.2d 451 (1983); *Commonwealth v. Truesdale*, 502 Pa. 94, 465 A.2d 606 (1983); *Commomwealth v. Alexander*, 435 Pa. 33, 255 A.2d 119 (1969); *Commonwealth v. Woodhouse*, 401 Pa. 242, 164 A.2d 98 (1960); *Burke v. Pittsburgh Limestone Corporation*, 375 Pa. 390, 100 A.2d 595 (1953); *In re Borsch's Estate*, 362 Pa. 581, 67 A.2d 119 (1949); *In re Burtt's Estate*, 353 Pa. 217, 162, 44 A.2d 670 (1945); *Monongahela Street Railway Co. v. Philadelphia Company*, 350 Pa. 603, 39 A.2d 909 (1944); *see Smith v. Glen Alden Coal Company*, 347 Pa. 290, 32 A.2d 227 (1943); *Colonial Trust Company v. Flanagan*, 344 Pa. 556, 25 A.2d 728 (1942).

The Opinion in Support of Reversal seeks to give legitimacy to its position by arguing that the underpinnings of *General Electric* have been eroded. I suggest that this fabrication of "legitimacy" is vapor thin. First, the argument centers only upon the analysis of the view of three of the seven members of the Court. *General Electric Corp. v. Pennsylvania Human Relations Commission, supra* 469 Pa. at 295, 365 A.2d at 650 (opinion of Pomeroy, J., announcing the judgment of the Court, joined by Eagen and

interpretation to a statute and the legislature thereafter leaves it unchanged, it is presumed that the legislature accepts the interpretation. *E.g., DiGirolamo v. Apanayage*, 454 Pa. 557, 312 A.2d 382 (1973); *Commonwealth v. Wanamaker*, 450 Pa. 77, 296 A.2d 618 (1972); *Pennsylvania Labor Relations Board v. Uniontown Hospital Ass'n.*, 432 Pa. 146, 247 A.2d 621 (1968); *Commonwealth v. Willson Products, Inc.*, 412 Pa. 78, 194 A.2d 162 (1963); *Rader v. Pennsylvania Turnpike Commission*, 407 Pa. 609, 182 A.2d 199 (1962); *Cali v. City of Philadelphia*, 406 Pa. 290, 177 A.2d 824 (1962); *In re Loeb's Estate*, 400 Pa. 368, 162 A.2d 207 (1960).

5. The Commonwealth Court has consistently followed our allocation of the burden of proof in *General Electric*. *Winn v. Transworld Airlines, Inc.*, 75 Pa.Commw. 366, 462 A.2d 301 (1983); *Blackburn v. Pennsylvania Human Relations Commission*, 62 Pa.Commw. 171, 435 A.2d 671 (1981); *Berks County Prison v. Pennsylvania Human Relations Commission*, 36 Pa.Commw., 433, 387 A.2d 1030 (1978); *Luzerne County Community College v. Pennsylvania Human Relations Commission*, 33 Pa.Commw. 121, 381 A.2d 201 (1977).

O'Brien, JJ.). Moreover the Pomeroy view did not rely solely upon the federal cases.[6]

Justice Pomeroy set forth as an independent ground "certain pragmatic considerations":

The employer has far easier access to the facts which must be established in order to prove the relative qualifications of those employees who were retained and those employees who were laid off in any given work curtailment situation. Where objective criteria have been employed, the employer is in the better position to demonstrate which standards were used and whether they were applied in a nondiscriminatory manner. Where employment decisions have been based upon the employer's subjective assessments, it is the employer alone who can articulate the rationale behind his decisions.

To cast the burden of establishing one's relative qualifications on the complainant would, in both objective and subjective situations, impose significant obstacles of time and expense which could serve to deter vigorous enforcement of the rights conferred by the statute. In the case where subjective standards have been employed the burden of proving relative qualifications might well be an impossible one.

General Electric Corp. v. Pennsylvania Human Relations Commission, supra, 469 Pa. at 306–307, 365 A.2d at 657 (opinion of Pomeroy, J., announcing the judgment of the Court, joined by Eagen and O'Brien, JJ.)

This argument is still as persuasive as it was when initially articulated. Moreover it is consistent with the traditional rules of evidence. See, e.g., Beckert v. Warren, 497 Pa. 137, 439 A.2d 638 (1981); Corabi v. Curtis Publishing Co., 441 Pa. 432, 273 A.2d 899 (1971); Barrett v. Otis Elevator Co., 431 Pa. 446, 246 A.2d 668 (1968); Izzi v. Philadelphia Transportation Co., 412 Pa. 559, 195 A.2d 784 (1963); Waters v. New Amsterdam Casualty Co., 393

6. The accuracy of the Opinion in Support of Reversal's interpretation of the federal decisions as it relates to disparate impact and present effect cases is subject to serious dispute.

Pa. 247, 144 A.2d 354 (1958); *Skeen v. Stanley Co. of America*, 362 Pa. 174, 66 A.2d 774 (1949); *MacDonald v. Pennsylvania R. Co.*, 348 Pa. 558, 36 A.2d 492 (1944); *Meth v. Broad Street & Bonded Bldg. & Loan Ass'n.*, 346 Pa. 331, 30 A.2d 119 (1943); *Valles v. Peoples-Pittsburgh Trust Co.*, 339 Pa. 33, 13 A.2d 19 (1940); *Fazio v. Pittsburgh Rys. Co.*, 321 Pa. 7, 182 A. 696 (1936); *McCormick, Evidence* § 337 (2d ed. 1972); 9 J. Wigmore, *Evidence* §§ 2486, 2509 (3d ed. 1940).

The argument of the Opinion in Support of Reversal suggesting that the *General Electric* standard could amount to "reverse discrimination" is an emotional ploy which will not stand scrutiny. The employer is only required to demonstrate that its employment decision was not tainted by the alleged bias. This is not an onerous or unreasonable burden. It is in fact the minimum requirement of an Act which has as its stated purpose:

It is hereby declared to be the public policy of this Commonwealth to foster the employment of all individuals in accordance with their fullest capacities regardless of their ... sex ... and to safeguard their right to obtain and hold employment without such discrimination [and] to assure equal opportunity to all individuals ....

Act of October 27, 1955, P.L. 744, § 2, *as amended*, 43 P.S. § 952(b).

In the view expressed by the Opinion in Support of Reversal, it is implied that *General Electric* places the burden of persuasion upon the employer to prove that complainant was not the best able and most competent to perform the services required. To the contrary, I view the *General Electric* holding as merely placing the burden of production of evidence regarding the employer's reasons for rejecting the plaintiff. This latter approach was followed by the Commission which concluded, after reviewing all of the evidence, that Ms. Winn was the victim of unlawful discrimination on the basis of sex and race and, therefore, entitled to recovery.

 If the Act is to be given any efficacy, the employer must be required to set forth its reasons for the rejection of the complainant. Once the employee has established that he or she is a member of a protected minority, that he or she applied for the position and was in fact qualified and that another applicant was selected to fill the position, the employer at that point must come forward and meet the burden of producing evidence to establish that the judgment was not as a result of bias. This is the procedure that was followed before the Commission and the Commonwealth Court appropriately concluded:

> ... [W]hile the evidence presented did not directly prove an intent to discriminate against Ms. Winn for these three positions, sufficient evidence was presented to permit the Commission to infer bias against Ms. Winn within the framework of the *McDonnell-Douglas* and *Burdine* analysis. While this Court may have come to a different conclusion based on the evidence presented, questions of credibility, the weight accorded to evidence and the inferences therefrom are within the province of the factfinders and all findings must be accepted by this Court where, as here, they are supported by substantial evidence.

75 Pa.Commw. 366, 375, 462 A.2d 301, 305 (1983) (citations omitted).

I, therefore, would affirm the Order of the Commonwealth Court.

LARSEN, J., joins in this opinion.

## OPINION IN SUPPORT OF AFFIRMANCE

LARSEN, Justice.

██ Mr. Justice Flaherty would overturn this Court's seminal decision of *General Electric Corp. v. Pennsylvania Human Relations Commission (PHRC)*, 469 Pa. 292, 365 A.2d 649 (1976), and would, in the process, discard a consistent body of precedent in the Commonwealth Court that has consistently applied the principles and guidelines enunciated by that decision. This precipitous and danger-

ous rejection of *General Electric* is predicated upon a misunderstanding of the holding and reasoning of that decision, as well as of its precedental value as a *majority* opinion, the construction of which has been presumptively approved by the General Assembly. The misunderstanding is compounded by a superficial and fundamentally flawed analysis of federal precedent in the title VII/employment discrimination area.[1] Having erroneously rejected *General Electric*, the Opinion in Support of Reversal then, in two terse sentences,[2] would impose a significant—perhaps insurmountable—additional burden upon a complainant's cause of action in an employment discrimination case under the Pennsylvania Human Relations Act of 1955 (hereinafter the Act),[3] namely, that the complainant must demonstrate, as part of his or her prima facie case, that he or she was the "best able and most competent" applicant to perform the services required for the job. Under this approach, an employer who is demonstrated to have intentionally discriminated against an applicant on the basis of race or sex,[4] and who never undertook a comparative evaluation of the respective applicants because of the racial or gender bias, may *nevertheless* be insulated from liability under the Act because the complainant may not be able to prove that he or she was the "best able and most competent" of the applicants for the job. *General Electric* wisely rejected such an

1. Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000(e) *et seq.*

2. The Opinion in Support of Reversal states, slip opinion at 406:
 *The definition of a prima facie case,* applicable to cases brought under Section 5(a) of the Pennsylvania Human Relations Act, should, in accordance with an overruling of the *General Electric* decision, *be modified to include the additional showing by the complainant that he was the "best able and most competent" applicant.* This corresponds to the requirement in Section 5(a) of our Act, not found in the analogous provision of Title VII, that the complainant have been "the best able and most competent to perform the services required," in order for unlawful discrimination to be found.

3. Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§ 951–963.

4. Or on the basis of "color, religious creed, ancestry, age, . . . national origin or non-job related handicap or disability of any individual. . . ." 43 P.S. § 955(a) (Supp.1984–85).

interpretation of the Act as offensive to its spirit and its humanitarian objectives, and as being at odds with the intent of the legislature.

Initially, Mr. Justice Flaherty improperly characterizes *General Electric* as "a plurality decision by this Court." At 160. To the contrary, six members of this Court agreed with Justice Pomeroy's interpretation of the "best able and most competent" proviso of section 5(a) of the Act, 43 P.S. § 955(a).[5]

The employer in *General Electric* had argued that the phrase "if the individual is the best able and most competent to perform the services required" imposed upon the complainant the burden of proving, as part of a prima facie case, that he or she was the best able and most competent of the applicants. 469 Pa. at 301, 365 A.2d at 654. Justice Pomeroy stated:

This Court has not heretofore had occasion to consider the "best able and most competent" clause of Section 5(a). In doing so we are, of course, required to ascertain as best we can what the legislature intended to express.... In this process we are to be guided by the directive of the legislature in the Act itself that "[t]he provisions of [PHRA] shall be construed liberally for the accomplishment of the purposes thereof." Act of October 27, 1955, P.L. 744, *as amended* 43 P.S. § 962. These purposes are legislatively declared in the Act as follows:

"It is hereby declared to be the public policy of this Commonwealth to foster the employment of all individuals in accordance with their fullest capacities regardless of their [race or] sex ... and to safeguard their right to obtain and hold employment without such

5. Section 5(a) provides, in relevant portion:
 It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification ... (a) For any employer because of race, ... [or] sex, ... of any individual to ... discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the services required.

discrimination [and] to assure equal opportunities to all individuals ...." Act of October 27, 1955, P.L. 744, § 2 *as amended* 43 P.S. § 952(b).

Thus approached, the choice of placing on a complainant the burden of proving the superiority of his or her abilities as part of establishing a prima facie case, on the one hand, or of requiring an employer to assert the "best able" proviso in defending a challenge to an employment decision becomes relatively easy, for we must adopt a construction which, without doing violence to the language of the statute, best promotes the goal of equal employment opportunities. We believe that the legislature intended that it is the employer who should shoulder the burden of demonstrating that the complainant was not "best able and most competent to perform the services required."

469 Pa. at 302, 365 A.2d at 654.

Justice Pomeroy was joined by Justices Eagen and O'Brien. Chief Justice Jones dissented without opinion. The concurring opinion of Justice Manderino, joined by Justices Roberts and Nix, quite clearly *agrees with Justice Pomeroy as to the above-quoted construction of section 5(a) of the Act.* The *only* point of disagreement with Justice Pomeroy's opinion was that the concurring members of the Court *would have gone further* and would have held that the Act imposed an affirmative obligation on an employer to dispel a discriminatory atmosphere and attitudes held by employees of the defendant/employer where such atmosphere/attitudes "chilled" the employment rights of minority employees, even in the absence of evidence causally linking such atmosphere/attitudes with discriminatory policies or practices of the employer. 469 Pa. at 317–19, 365 A.2d at 662–63. (Manderino, J., concurring, joined by Roberts and Nix, JJ.) ("there is one important aspect of this case that I feel should be considered by the Commonwealth Court when the case is remanded for further proceedings.") Accordingly, *General Electric is a majority opinion of this Court* on the issue of the construction of the "best able

and most competent" proviso of section 5(a) of the Act. The Commonwealth Court has certainly accepted and applied *General Electric* as a majority decision in a consistent body of case law that has developed in that court since 1976.[6]

For reasons I shall explain below, I do not agree with Mr. Justice Flaherty that, in light of federal precedent, *General Electric* was wrongly decided. However, even if *General Electric* misread the intent of the legislature and misconstrued the "best able and most competent" proviso of section 5(a), this Court is not now at liberty to give that proviso a different interpretation *for it has been adopted by the legislature by operation of law.* The Statutory Construction Act of 1972 provides:

**Presumptions in ascertaining legislative intent**

In ascertaining the intention of the General Assembly in the enactment of a statute, the following presumptions, among others, may be used:

\* \* \* \* \* \*

(4) That when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language.

Since our majority decision in *General Electric* in 1976, the General Assembly has made amendments to section 5(a) of the Act *no less than four times.*[7] These amendments made several significant modifications to the Act[8] yet did not in any way modify the proviso "if the individual is the best able and most competent to perform the services

---

6. *See, e.g., Harrisburg School Dist. v. PHRC,* 77 Pa.Commw. 594, 466 A.2d 760 (1983); *Caterpillar Tractor Co. v. Commonwealth, PHRC,* 78 Pa.Commw. 86, 466 A.2d 1129 (1983); *Reed v. Miller Printing Equipment Div. of W. Gear Corp.,* 75 Pa.Commw. 360, 462 A.2d 292 (1983); *National Railroad Passenger Corp. v. Commonwealth PHRC,* 70 Pa. Commw. 62, 452 A.2d 301 (1982), allocatur denied.

7. These amendments were: 1978, Nov. 26, P.L. 292, No. 309, § 1, effective in 60 days; 1980, Jan. 10, P.L. 1, No. 1, § 1, effective in 60 days; 1980, Dec. 9, P.L. 1122, No. 198, § 1, imd. effective; 1982, April 8, P.L. 284, No. 80, § 2, imd. effective.

8. *See* summary of these amendments in Comments to 43 P.S. § 955.

required" as interpreted by this Court." It is obvious, therefore, that the legislature was satisfied that this Court's interpretation of section 5(a) in *General Electric* in 1976, an interpretation consistently followed and applied by the Commonwealth Court, was correct. Moreover, *the construction placed upon section 5(a) by General Electric has, by operation of law, become a part of the Act* which this Court is not now authorized to excise. *See Commonwealth v. Philadelphia Electric Co.*, 472 Pa. 530, 539–40, 372 A.2d 815 (1977); *Weber v. Lynch*, 473 Pa. 599, 609 n. 6, 375 A.2d 1278 (1977); *In re June 1979 Allegheny County Investigating Grand Jury*, 490 Pa. 143, 149 n. 7, 415 A.2d 73 (1980) (Eagen, C.J. opinion announcing the judgment of the court); *School District of Philadelphia v. Twer*, 498 Pa. 429, 441–42, 447 A.2d 222 (1982) (Roberts, C.J., dissenting, joined by O'Brien and Larsen, JJ.).

Even assuming, merely for the sake of argument, that this Court is at liberty to reevaluate the wisdom and reasoning of *General Electric*, there is no reason to disturb that decision on the basis that it is contrary to principles of federal law; *it is not*. The superficial analysis of the federal title VII precedent set forth in the Opinion in Support of Reversal is, simply, incorrect. Mr. Justice Flaherty relying, on *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *United States Postal Service v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), states:

> Thus, the *General Electric* decision is clearly contrary to principles of fair employment law which have emerged relative to the federal analogue to Section 5(a) of the Pennsylvania Human Relations Act, viz. Title VII of the Civil Rights Act of 1964. Inasmuch as the *General Electric* rule was expressly promulgated for the primary purpose of conforming to principles of federal law, 469 Pa. at 303, 365 A.2d at 654–655, the rule's continued existence cannot be supported on that basis.

Slip opinion at 405.

The fundamental flaw in this analysis is that it fails to differentiate between, or even to recognize, the several

established theories of employment discrimination that have evolved in the federal courts and that were considered and accommodated in *General Electric.* These recognized theories of employment discrimination in the Title VII sphere are generally classified as "disparate treatment", "disparate impact", and "present effects of past discrimination." [9] *See* Schlei and Grossman, *Employment Discrimination Law,* Parts I–IV (1976 ed. and 1979 supp.) (hereinafter *Schlei and Grossman*); Athas, *Defendant's Burden of Proof in Title VII Class Action Disparate Treatment Suits,* 31 Am.U.L.Rev. 755, 756 (1982); Terrell, *Employment Discrimination: The Defendant's Burden,* 29 Loy.L. Rev. 287, 288 (1983) (hereinafter *Terrell*); Smalls, *The Burden of Proof in Title VII Cases,* 25 How.L.J. 247 (1982) (hereinafter *Smalls*).

As noted Title VII authors, Schlei and Grossman, have explained:

When Title VII of the Civil Rights Act of 1964 ... was first passed, it was viewed by the Congress which passed it solely as a prohibition against disparate treatment based on race, color, religion, sex or national origin.

One of the most significant developments in the laws prohibiting employment discrimination ... has been the development, by the courts, of the remaining ... categories of discrimination, particularly the second and third categories, perpetuating in the present the effects of past discrimination and disparate impact. Both of these categories assume a lack of intent to discriminate and that the practices complained of are neutral on their face.

---

**9.** There is a fourth generally recognized theory of employment discrimination, namely, the failure of an employer to make reasonable accommodation to an employee's religious observances or practices. The genesis of this theory is §§ 701(j) and 703(a)(1) of title VII, 42 U.S.C. §§ 2000e(j) and 2000e–2(a)(1). This is a unique category of discrimination law which bears little resemblance to the theories discussed in text and, hence, will not be considered further in this opinion. *See generally, Schlei and Grossman, supra* at Part IV.

*Schlei and Grossman, supra* at 1–2.[10] In *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the United States Supreme Court stated:

"Disparate treatment" such as is alleged in the present case is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. (Citation omitted.) Undoubtedly disparate treatment was the most obvious evil Congress had in mind when it enacted Title VII....

Claims of disparate treatment may be distinguished from claims that stress "disparate impact." The latter involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another *and cannot be justified by business necessity.* See infra, at 349 [97 S.Ct. at 1861], 52 L.Ed.2d 423. Proof of discriminatory motive, we have held, is not required under a disparate-impact theory. Compare, e.g., *Griggs v. Duke Power Co.* 401 US 424, 430–432, 28 LEd2d 158, 91 S.Ct. 849 [853–854] with *McDonnell Douglas Corp. v. Green* [citations omitted]. See generally B. Schlei & P. Grossman, Employment Discrimination Law 1–12 (1976); Blumrosen, Strangers in Paradise: *Griggs v. Duke Power Co.* and the

**10.** Because proof of discriminatory motive is critical in disparate treatment cases, and unnecessary in disparate impact and present effects of past discrimination cases, the guidelines for the order and allocation of proof for the latter two theories have developed along similar lines. *See Furnco Construction Co. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), *esp.* 581–85 (Marshall, J., concurring and dissenting opinion, joined by Brennan, J.). *Smalls, supra* at 248, n. 6 & 7; *Schlei and Grossman, supra* Chapter 36 Proof, *esp.* 1159; Smith, *Employer Defenses in Employment Discrimination Litigation: A Reassessment of Burdens of Proof and Substantive Standards Following Texas Department of Community Affairs v. Burdine*, 55 Temp.L.Q. 372, 372–73 (1982) (hereinafter *Smith* ).

Accordingly, it should be understood that, for purposes of this opinion, "disparate impact" includes "present effects of past discrimination" unless otherwise indicated.

Concept of Employment Discrimination, 71 MichLRev 59 (1972). Either theory may, of course, be applied to a particular set of facts.

431 U.S. 335, n. 15, 97 S.Ct. 1854, n. 15. (Emphasis added.)

While the *McDonnell Douglas/Burdine/Aikens* order and allocation of proof are the established guidelines in disparate treatment cases, the United States Supreme Court has *consistently* cautioned that these are not rigid, inflexible rules. "The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required [by the complainant] is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas v. Green, supra* 411 U.S. at 802, n. 14, 93 S.Ct. at 1824, n. 14. The *McDonnell Douglas* guidelines are "not unwavering absolutes." *General Electric Corp. v. PHRC, supra* 469 Pa. at 304–05 n. 11, 365 A.2d at 656 n. 11. *See International Brotherhood of Teamsters v. United States, supra* 431 U.S. at 358, 97 S.Ct. at 1866; *Texas Department of Community Affairs v. Burdine, supra* 450 U.S. at 253, n. 6, 101 S.Ct. at 1094; *Furnco Construction Co. v. Waters, supra* 438 U.S. at 575–76, 98 S.Ct. at 2948–49.

Accordingly, as discriminatory intent is not a critical factor in disparate impact and present effect cases, it is not surprising that a distinct set of guidelines regarding the order and allocation of proof has developed for the latter situations. Again, Schlei and Grossman instruct:

> *Griggs v. Duke Power Co.* is the counterpart of *McDonnell Douglas v. Green* in setting forth the basic order and allocation of proof with regard to the disparate impact and present-effects-of-past-discrimination theories of discrimination. *Griggs* was a disparate impact case. The Supreme Court has not yet dealt with proof in a present-effects-of-past-discrimination case. However, the basic order and allocation of proof appears to be essentially the same in both kinds of cases.

*Schlei and Grossman, supra* at 1159, 1159 n. 45. Justice Marshall further elaborated in *Furnco Construction Co. v.*

*Waters, supra* 438 U.S. at 581–85, 98 S.Ct. at 2952–53 (concurring and dissenting opinion, joined by Brennan, J.):

It is well established under Title VII that claims of employment discrimination because of race may arise in two different ways. *Teamsters v. United States,* 431 US 324, 335–336, n 15, 52 LEd2d 396, 97 SCt 1843 [1854–1855 n. 15] (1977). An individual may allege that he has been subjected to "disparate treatment" because of his race, or that he has been the victim of a facially neutral practice having a "disparate impact" on his racial group. The Court today concludes that the Court of Appeals was correct in treating this as a disparate-treatment case controlled by *McDonnell Douglas Corp. v. Green,* 411 US 792, 36 LEd2d 668, 93 SCt 1817 (1973).

* * * * * *

Where the Title VII claim is that a facially neutral employment practice actually falls more harshly on one racial group, thus having a disparate impact on that group, our cases establish a different way of proving a claim. See, e.g., *Teamsters,* supra, at 336 n 15, 349, 52 LEd2d 396, 97 SCt 1843 [1854 n. 15]; *Dothard v. Rawlinson,* 433 US 321, 329, 53 LEd2d 786, 97 SCt 2720 [2726] (1977); *General Electric Co. v. Gilbert,* 429 US 125, 137, 50 LEd2d 343, 97 SCt 401 [408] (1976); *Albermarle Paper Co. v. Moody,* 422 US 405, 422, 425, 45 LEd2d 280, 95 SCt 2362 [2373, 2375] (1975); *Griggs v. Duke Power Co.* 401 US 424, 430–432, 28 LEd2d 158, 91 SCt 849 [853–854] (1971). As set out by the Court in *Griggs v. Duke Power Co.,* to establish a prima facie case on a disparate-impact claim, a plaintiff need not show that the employer had a discriminatory intent but need only demonstrate that a particular practice in actuality "operates to exclude Negroes." Id., at 431, 28 LEd2d 158, 91 SCt 849 [at 853].

Once the plaintiff has established the disparate impact of the practice, *the burden shifts to the employer to show that the practice has "a manifest relationship to the employment in question."* Id., at 432, 28 LEd2d 158, 91 SCt 849 [at 854]. The "touchstone is business

necessity." [*Id.*] and the practice *"must be shown to be necessary to safe and efficient job performance* to survive a Title VII challenge." *Dothard v. Rawlinson,* supra, at 332 n 14, 53 LEd2d 786, 97 SCt 2720 [at 2728 n. 14]. Under this principle, a practice [having a discriminatory impact or effect] would be invalid if the practice in actuality impacts more harshly on a group protected under Title VII, *unless the practice can be justified by business necessity.* (Emphasis added).

■ A review of the cases and commentary discloses virtually unanimous recognition that the employer/defendant in a Title VII case involving disparate impact/effect faces a much more difficult burden than the employer in a disparate treatment case. *See, e.g.,* Furnish, *A Path Through the Maze: Disparate Impact and Disparate Treatment under Title VII of the Civil Rights Act of 1964 after Beazer and Burdine,* 23 B.C.L.Rev. 419, 419–21 (1982) (hereinafter *Furnish*); *Smalls, supra* at 255–57, 267; *Smith, supra; Athas, supra* at 308; *Terrell, supra* at 312–14. The employer must, after the complainant has made out a prima facie case, somehow justify its policies or practices which cause or contribute to the disparate impact or discriminatory effect. To do this in the federal sphere, the employer may offer certain affirmative defenses such as "business necessity" or "bona fide occupational qualification." Essentially, the employer must demonstrate that any given requirement, practice or policy is job-related and bears a "manifest relationship to the employment in question." *Griggs v. Duke Power Co., supra* 401 U.S. at 430–31, 91 S.Ct. at 853; *General Electric Corp. v. PHRC, supra* 469 Pa. at 304, 365 A.2d at 655–56; *Furnish, supra* at 426–28; *Smith, supra* at 388; *Smalls, supra* at 252–54.

■ In Pennsylvania, *General Electric* has determined that the "best able and most competent" language of section 5(a) of our Act is akin to the affirmative business necessity defense in the federal area. 469 Pa. at 303–04, 365 A.2d at 655–56. That is, under the disparate impact or present effects of past discrimination theories, the *primary* theories that were espoused by complainants in *General*

*Electric,* the employer that wishes to avail itself of the "best able and most competent" defense (or the "business necessity" or "bona fide occupational qualification" defenses) bears the burden of production and of persuasion. *See Smalls, supra* at 253–55; *Smith, supra* at 388; *Furnish, supra* at 425–29; *Schlei and Grossman, supra* at 1195–96. *See also Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425–27, 95 S.Ct. 2362, 2375–76, 45 L.Ed.2d 280 (1975). It is not part of the employee's case to negate the existence of these affirmative defenses. While an employer is under no obligation, in a disparate treatment case, to offer proof of these affirmative defenses in order to meet its intermediate burden of proof under the *McDonnell Douglas/Burdine/Aikens* guidelines, the employer that *chooses* to avail itself of such a defense must, of course, sustain its burden of proof thereon.

The foregoing certainly does not purport to be an exhaustive survey or analysis of federal employment discrimination law which has many nuances in the area of order and allocation of proof that are not discussed herein. The discussion of the various theories and distinct guidelines is intended, rather, to demonstrate that *General Electric* is *not* contrary to principles of federal law as Mr. Justice Flaherty claims. Indeed, *General Electric* is a thorough and incisive integration of the principles of federal employment discrimination law with the development of employment discrimination law under our Act.

The instant case was litigated solely on the theory of disparate treatment of an individual. The Commonwealth Court opinion is a model for the appellate application of the *McDonnell Douglas/Burdine/Aikens* guidelines. Having properly applied the *appropriate* guidelines for the order and allocation of proof in a disparate treatment case, including the recognition that the complainant in such a case always retains the ultimate burden of persuasion of discriminatory intent, 462 A.2d 303–04, I would affirm that court's decision.

NIX, C.J., joins in this Opinion In Support of Affirmance.

## OPINION IN SUPPORT OF AFFIRMANCE

HUTCHINSON, Justice.

On the particular facts of this case I believe the evidence is sufficient, albeit barely, to support the Pittsburgh Human Relations Commission's findings of discrimination in three of the five matters of which appellee complained. I therefore believe Commonwealth Court must be affirmed. However, because the precedential value of this case is limited to its facts, I would dismiss the appeal as improvidently granted.

## OPINION IN SUPPORT OF REVERSAL

FLAHERTY, Justice.

This is an appeal from an order of the Commonwealth Court which reversed[1] an order of the Court of Common Pleas of Allegheny County which reversed a decision of the Pittsburgh Commission on Human Relations (hereinafter Commission). The Commission determined that the appellee, Emily E. Davis Winn, a black female, had been discriminated against on the basis of race and sex by her employer, the appellant, Trans World Airlines, Inc., on three separate occasions when Winn had sought promotion. With regard to each of these instances in which the Commission found unlawful discrimination, the Court of Common Pleas reversed, holding that Winn had failed to prove that she was the best able and most competent person available for the positions. The Commonwealth Court reversed on the grounds that the Court of Common Pleas erred in placing upon Winn the burden of proving superior ability for the positions.

The primary issue in the instant appeal is the proper allocation of burden of proof in an employment discrimination case governed by Section 5(a) of the Pennsylvania

1. *Winn v. Trans World Airlines, Inc.,* 75 Pa.Commw. 368, 462 A.2d 301 (1983).

Human Relations Act.[2] Section 5(a) of the Act, 43 P.S.
§ 955(a), provides in relevant part:

It shall be an unlawful discriminatory practice, unless
based upon a bona fide occupational qualification ...: (a)
For any employer, because of the race, ... sex, ... of
any individual to refuse to hire or employ, or to bar or to
discharge from employment such individual, or to other-
wise *discriminate* against such individual with respect to
compensation, hire, tenure, terms, conditions or privileges
of employment, *if the individual is the best able and
most competent to perform the services required.*

(emphasis added).

In a plurality decision by this Court, *General Electric
Corp. v. Pennsylvania Human Relations Commission*,
469 Pa. 292, 365 A.2d 649 (1976) (Pomeroy, J., joined by
Eagen and O'Brien, JJ.), we held it to be the employer's
burden, under Section 5(a), to demonstrate that the com-
plainant was not "best able and most competent to perform
the services required." That decision was expressly rested
on the belief that such an allocation of proof would be in
accord with developments in federal fair employment laws,
and upon the view that the employer should bear the
burden because the employer has easier access to the facts
which influenced employment decisions. Re-examination of
the *General Electric* rationale, however, reveals revision of
the burden of proof standards set forth in that decision to
be warranted.

Although the independent status of our state Human
Relations Act is not to be ignored, this Court has, in the
interest of uniformity and predictability in enforcement of
equal employment legislation, construed the Human Rela-
tions Act in light of principles of fair employment law which
have emerged relative to the corresponding federal statute,

---

2. The present case was brought under the Pittsburgh Human Relations
Ordinance, promulgated by Pittsburgh City Council pursuant to au-
thority granted by the Pennsylvania Human Relations Act at 43 P.S.
962.1. Decisions as to the burden of proof under Section 5(a) of the
Pennsylvania Human Relations Act are regarded as controlling au-
thority for the purposes of the Ordinance.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. *Chmill v. City of Pittsburgh,* 488 Pa. 470, 491, 412 A.2d 860, 871 (1980). It is argued that the federal precedents relied upon in *General Electric* did not support the holding in that case, but it is at least clear that supervening federal decisions have condemned the approach followed in that case. The federal courts do not require employers to prove that successful job applicants were more qualified than complainants, and, indeed, the Supreme Court of the United States has held it to be reversible error, in Title VII cases, to impose this burden upon employers. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 258–260, 101 S.Ct. 1089, 1096–1097, 67 L.Ed.2d 207, 218–219 (1981).

Imposing such a burden upon employers, as is required under the *General Electric* rule, perhaps places the employer at risk when, given a choice among *equally* qualified candidates, or even a choice among those the employer merely fears may be regarded by the Commission as being at least arguably equally qualified, in the event the employer fails to select a minority applicant. Thus, the employer could be induced by the *General Electric* rule to *favor* minority applicants, rather than to provide, as was the intent of the Human Relations Act, truly *equal* opportunities for *all* applicants. This fear was clearly expressed in *Burdine,* 450 U.S. at 259, 101 S.Ct. at 1096–1097, 67 L.Ed.2d at 219,

> Title VII, however, does not demand that an employer give preferential treatment to minorities or women . . . .
> It does not require the "employer to restructure his employment practices to maximize the number of minorities and women hired. . . .
>
> [Requiring the employer to prove that the person hired was more qualified than the complainant would require] the employer to hire the minority or female applicant whenever that person's objective qualifications were equal to those of a white male applicant. But Title VII does not obligate an employer to accord this preference.

> Rather, the employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria. The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination.

(citations omitted). Thus, the *General Electric* decision is clearly contrary to principles of fair employment law which have emerged relative to the federal analogue to Section 5(a) of the Pennsylvania Human Relations Act, viz. Title VII of the Civil Rights Act of 1964. Inasmuch as the *General Electric* rule was expressly promulgated for the primary purpose of conforming to principles of federal law, 469 Pa. at 303, 365 A.2d at 654–655, the rule's continued existence cannot be supported on that basis.

The second reason advanced in *General Electric* for the rule announced therein was a purportedly pragmatic one, that the employer has better access to the facts which influenced an employment decision, and, therefore, that the employer should be required to prove that the complainant was not the "best able and most competent" applicant, thus saving the complainant from incurring the difficulty, time, and expense of establishing one's own relative qualifications. Upon re-examination of this rationale, however, it is clear that placing this burden upon the accused employer, merely because there has been an allegation of wrongdoing, is truly repugnant to the spirit of traditional approaches requiring that one who accuses of wrongdoing must bear the burden of proving its existence. The mere fact that the employer is in possession of facts relating to employment decisions is not reason to discard the normal requirement that complainants prove their own cases, for access to data in the employer's possession may be sought through the usual processes of discovery, and contents of the Commission's investigatory files may be sought by complainants. Thus, inasmuch as the *General Electric* decision rests upon a faulty rationale, it should be overruled.

Pervasive federal regulation of employment matters has resulted in the development of an extensive body of federal precedents in the realm of employment discrimination law, and these precedents have been utilized in this Commonwealth, although not binding, as persuasive authority, particularly in regard to proof requirements. See *Caterpillar Tractor Co. v. Commonwealth Human Relations Commission*, 78 Pa.Commw. 86, 90, 466 A.2d 1129, 1132 (1983) ("The method by which these types of cases are to be adjudicated is now familiar.") Decisions of the Supreme Court of the United States have rested the ultimate burden of persuasion in federal employment discrimination cases squarely upon the complainant, rather than upon the employer. *U.S. Postal Service Board v. Aikens*, 460 U.S. 711, 714, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403, 410 (1983); *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217. In its recent decision in *Aikens*, the Supreme Court of the United States summarized employment discrimination proof requirements as follows:

By establishing a prima facie case, the plaintiff in a Title VII action creates a rebuttable "presumption that the employer unlawfully discriminated against" him. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To rebut this presumption, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Burdine*, supra, 450 U.S., at 255, 101 S.Ct., at 1094. In other words, the defendant must "produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." Id., at 254, 101 S.Ct., at 1094.

But when the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the fact finder must then decide whether the rejection was discriminato-

ry within the meaning of Title VII. At this stage, the *McDonnell-Burdine* presumption "drops from the case," id., at 255, n. 10, 101 S.Ct. at 1095, n. 10, and "the factual inquiry proceeds to a new level of specificity." Id., at 255, 101 S.Ct., at 1095. . . .

The "factual inquiry" in a Title VII case is "whether the defendant intentionally discriminated against the plaintiff." *Burdine,* supra, at 253, 101 S.Ct., at 1093. . . . As we stated in *Burdine:* "The plaintiff retains the burden of persuasion. [H]e may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." 450 U.S., at 256, 101 S.Ct., at 1095.

460 U.S. at 713–716, 103 S.Ct. at 1481–1482, 75 L.Ed.2d at 409–411. (footnote omitted).

The prima facie case referred to by the U.S. Supreme Court in *Aikens* has uniformly been regarded in the federal system, and, to the present, in this Commonwealth, as that set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 36 L.Ed.2d 668, 93 S.Ct. 1817 (1973). *Burdine,* 450 U.S. at 252–253, 101 S.Ct. at 1093, 67 L.Ed.2d at 215; *General Electric,* 469 Pa. at 304, 365 A.2d at 655–656. Under *McDonnell-Douglas,* a complainant makes out a prima facie case of discrimination, in the usual case, if he establishes that he is a member of a protected minority, that he applied for a job for which he was qualified, that his application was rejected, and that the employer continued thereafter to seek other applicants of equal qualification. 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677. The definition of a prima facie case, applicable to cases brought under Section 5(a) of the Pennsylvania Human Relations Act, should, in accordance with an overruling of the *General Electric* decision, be modified to include the additional showing by the complainant that he was the "best able and most competent" applicant. This corresponds to the requirement in Section 5(a) of our Act, not found in the

analogous provision of Title VII, that the complainant have been "the best able and most competent to perform the services required," in order for unlawful discrimination to be found.

Inasmuch as, at the Commission level of this proceeding, the complainant did not have the opportunity to establish a prima facie case, in accordance with the standards advanced herein, the order of the Commonwealth Court should be reversed and the case should be remanded to the Pittsburgh Commission on Human Relations for proceedings consistent herewith.

McDERMOTT and ZAPPALA, JJ., join this opinion in Support of Reversal.