# CITY OF PITTSBURGH, DEPARTMENT OF PUBLIC WORKS

v.

## Roderick FOSTER.

## Appeal of CITY OF PITTSBURGH, Appellant.

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 1995.
Decided Dec. 29, 1995.

Marianne S. Malloy, Assistant City Solicitor, for appellant.

Michael H. Marks, for appellee.

Before COLINS, President Judge, FRIEDMAN, J. (P.), and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

This is an appeal[1] by the City of Pittsburgh (City) from an order of the Court of Common Pleas of Allegheny County (trial court) affirming the decision and order of the City of Pittsburgh Commission on Human Relations (Commission) wherein the Commission concluded that City discriminated against Roderick Foster (Foster) in discharging him on the basis of a non-job related handicap, alcoholism, in violation of the Pittsburgh City Code.[2]

The relevant facts leading to Foster's discharge by City, as set forth in the Commission's decision, are as follows:

3. Complainant was employed as a Traffic Controller Electrician II in the Bureau of Operations, Department of Public Works, City of Pittsburgh.[3] He was hired on January 12, 1976. He was discharged, effective August 29, 1986. (Stipulation, Commission Exhibit 1).

4. On August 24, 1986, Complainant was involved in a motor vehicle accident while driving a city truck in the course of his employment. (Commission Exhibit No. 1; Tr. 46). A blood alcohol test administered by the police was .115. (Stipulation, Commission Exhibit 1).

---

1. We note that Judge Doris A. Smith was originally assigned to the panel and sat for oral arguments held on November 13, 1995. Judge Smith subsequently recused and President Judge James Gardner Colins replaced her on the panel having reviewed the briefs and record in the matter.

2. Section 659.02(a) of the Pittsburgh City Code provides, in relevant part, as follows:

It shall be an unlawful employment practice

. . .

(a) for any employer to refuse to hire any person or otherwise to discriminate against any person with respect to hiring, tenure, compensation, promotion, discharge or any other terms, conditions or privileges directly or indirectly related to employment because of race [or] non-job related handicap or disability.

3. A traffic controller is responsible, among other things, for repairing and maintaining City owned traffic signals. This position involves the use of City owned vehicles.

5. Complainant testified that on the night of the incident, he was working the 4:00 p.m. to 12:00 a.m. shift, assigned to maintenance. (Tr. 46). He had been drinking before his shift began and continued to drink at a bowling meeting that he attended while on duty. (Tr. 46).

6. After the bowling meeting, Complainant returned home to get a jacket and was involved in a car accident. (Tr. 46–47).

7. At the scene of the accident, Complainant contacted William Rogers, Supervisor in the traffic engineering division. (Tr. 133).

8. Complainant was taken to the police station by police and given a breathalizer test, whereupon he was charged with driving under the influence. (Tr. 51).

9. The following day, Complainant called the Department and spoke to Mr. Rogers who informed him that he was suspended. (Tr. 52). In a letter dated August 25, 1986, Louis Gaetano, Director of Public Works informed Complainant of his suspension pending discharge. (Exhibit "A").

10. At the time of the suspension, Complainant did not admit to anyone in the department that he had a drinking problem. (Tr. 96). Despite the results of the breathalizer tests Complainant denied fault in the accident. (Complainant's Exhibit "B").

(Commission's Decision, pp. 3–4).

Although City operated an Employee Assistance Program (EAP) whereby problems such as drug and alcohol dependency are addressed in order to help employees keep their job,[4] Foster was not offered participation in the program because he failed to acknowledge that he had an alcohol related problem and he failed to admit any responsibility for the automobile accident. Because Foster committed misconduct on the job, operating a City vehicle while under the influence of alcohol which lead to his arrest and damage to a City vehicle and, as noted, failed to acknowledge his drinking problem or responsibility for his actions, his employment was terminated.

Seven months following his termination, on March 24, 1987, Foster filed a complaint with the Commission, alleging that his discharge amounted to unlawful discrimination based on his race, black, and handicap, alcoholism. The Commission, following hearing, on December 6, 1993, issued an opinion and order concluding that City had unlawfully discriminated against Foster in discharging him as said discharge was based upon his non-job related handicap, alcoholism. The Commission dismissed Foster's allegation of race discrimination.

The Commission based its decision upon its conclusion that City arbitrarily failed to offer Foster admission into the EAP, Tract III program. The Commission rejected City's explanation for not offering the program to Foster, i.e., his failure to admit that he had an alcohol related problem and his denial of any wrongdoing regarding the auto accident he was involved in, as a pretext for discriminating against Foster.

Based upon its decision, the Commission ordered City to pay Foster $147,792.62 in back pay and $9,877.39 in attorney's fees. City appealed to the trial court which, without taking further evidence, affirmed by order dated January 10, 1995.

On appeal here,[5] City argues that the Commission erred in concluding that City's explanation of why Foster was not offered the Track III program was a pretext for discriminating against him and that City's decision not to offer Foster admission into the Track III program was arbitrary.

Initially, we note that a complainant attempting to establish a *prima facia* case of unlawful employment discrimination

4. There are three "Tracks" in City's EAP; Track I is where employees refer themselves; Track II is supervisor assisted but voluntary; Track III is used in lieu of discharge, although employee's have the option of not participating. (Notes of Testimony, 226–229).

5. We note that our scope of review is limited to determining whether constitutional rights were violated, whether the findings of the Commission were supported by substantial evidence and whether errors of law were committed. *George Clay Steam Fire Engine and Hose Co. v. Pennsylvania Human Relations Commission*, 162 Pa. Cmwlth. 468, 639 A.2d 893 (1994).

where, as here, it is alleged that their discharge was based on a non-job related handicap or disability, bears the burden of establishing the following: (1) that he or she is a handicapped or disabled person within the meaning of the law;[6] (2) that his or her handicap is non-job related;[7] and, (3) that he or she was discharged because of that handicap. *General Electric Corporation v. Human Relations Commission*, 469 Pa. 292, 304, 365 A.2d 649, 655–656 (1976). Once the plaintiff has established a prima facia case, the burden shifts to the employer to establish that a legitimate, non-discriminatory reason for denial of employment existed. *Winn v. Trans World Airlines, Inc.*, 506 Pa. 138, 484 A.2d 392 (1984).

The Commission concluded that Foster met his burden of establishing a prima facia case of discrimination as it found that Foster's handicap of alcoholism constituted a "non-job related handicap," that City knew of his handicap, and that he was discharged on this basis. The Commission, as noted, rejected City's stated reason for terminating Foster's employment, i.e., driving a City owned vehicle under the influence of alcohol and damaging City property, and concluded that City's failure to offer Foster admission to the Track III program was arbitrary, thus, constituting a pretext for discrimination. While City's appeal raises a number of argument's relating to whether the Commission erred in concluding Foster established a prima facia case of employment discrimination, assuming arguendo that such a showing was established, we address whether the Commission erred in concluding that City arbitrarily failed to offer Foster admittance into its Track III program and whether the Commission erred in concluding that City's stated reasons for terminating Foster, driving a City owned vehicle under the influence of alcohol and damaging City property, were a pretext for discrimination.

6. Neither party disputes that alcoholism constitutes a handicap. (See Commission's decision, p. 10, fof 36).

7. Although the City Code does not define "non-job related handicap," the Pennsylvania Human Relations Act (Act), Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951–962.2, at Section 954(p) provides the following definition:

■ Throughout the proceedings below, and as previously noted herein, City has maintained that Foster's termination was based solely on the fact that he was driving a City owned vehicle while under the influence alcohol which lead to his arrest and City property being damaged on August 24, 1986. City has also maintained throughout the proceedings that it did not offer Foster admission to the Track III program because Foster did not admit to having a drinking problem or acknowledge responsibility for the auto accident.

In the case of *Small v. Columbia Gas of Pennsylvania, Inc.*, 363 Pa.Superior Ct. 61, 525 A.2d 424 (1987), it was held that an employee's termination was not discriminatory where the employee was terminated following an arrest for driving under the influence of alcohol. There, the court found that the employer's stated reason for terminating the employee, i.e., that the incident leading to her arrest disclosed a lack of dependability and responsibility, both of which were essential qualities for the employee's job, was a legitimate nondiscriminatory reason for her termination.

Similarly, we find here that City's stated reason for Foster's discharge, i.e., that he was driving a City owned vehicle while under the influence of alcohol which led to his arrest and City property being damaged, was a legitimate nondiscriminatory basis for his discharge as his conduct disclosed a lack of dependability and responsibility, both of which were essential to his job performance.

■ As to whether City's failure to offer Foster admission into its Track III program was arbitrary, City presented the testimony of Ralph Kraszerski, City's Assistant Director of Public Works who testified that the Department of Public Works (Department)

(p) The term **"non-job related handicap or disability"** means any handicap or disability which does not substantially interfere with the ability to perform the essential functions of the employment which a handicapped person applies for, is engaged in or has been engaged in. Uninsurability or increased cost of insurance under a group or employe insurance plan does not render a handicap or disability job related.

had an unwritten practice/policy that before offering an employee Track III, at least some type of cooperation from the employee was necessary, such as their acknowledgment that a problem existed. City introduced the records of five Department employees who were going to be discharged but were instead offered participation in Track III as an alternative; all five, unlike Foster, acknowledged responsibility for the behavior resulting in their being disciplined. City also presented on this subject the testimony of Louis Gaetano, the Director of the Department of Public Works and Philip Schingar, the Assistant Direct of Personnel for Department. Based on this testimony, the Commission found as follows:

19. Since 1981, the City has operated an Employee Assistance Program (EAP). (Tr. 226). It is designed to address a variety of problems including alcohol and chemical dependency. (Commission, Exhibit 1). There are three different Tracks involved in the program: in Track one the employees refer themselves; Track Two is supervisor assisted but voluntary; Track three is in lieu of discharge. In Track 3, the employee is offered the opportunity to participate and may refuse. However, the employee is then discharged. (Tr. 226–229).

20. The determination as to whether Track Three is offered to employees is discretionary and rests with the department heads. (Tr. 229, 234).

21. Ralph Kraszerski, Assistant Director of Public Works, testified that he was made aware of Complainant's attendance problems through Complainant's supervisor, Mr. Rogers. (Tr. 139; Deposition, p. 12).

22. Mr. Kraszerski was responsible for reviewing the facts of a particular case and coordinating with the Director of the Department. Mr. Rogers, Complainant's supervisor, recommended termination and Mr. Kraszerski passed the recommendation along to the Director. (Tr. 139; Deposition p. 19).

23. Mr. Kraszerski had a discussion with the director concerning complainant's case and testified that the factors influencing his decision to terminate Complainant were that there was misconduct on the job that led to an arrest and damages to a city vehicle. According to Mr. Kraszerski, Complainant did not acknowledge the arrest and the pronouncement of intoxication. (Tr. 140). He did not think Track Three was appropriate for Complainant because of a claimed unwritten practice/policy that the Department have at least some type of cooperation from the employee in order to use Track Three as an alternative. He specifically stated that the employee must acknowledge the problem. (Tr. 141, 177, 178, 181, 182–183, 184).

24. However, Mr. Kraszerski further acknowledged that he is aware of the fact that people with drinking problems deny that fact. (Tr. 141; Deposition p. 24).

25. Mr. Kraszerski testified that he did not contact the EAP coordinator about Complainant's case. (Tr. 140; Deposition p. 21).

26. Those employees discussed at the hearing who participated in Track Three expressed a willingness to acknowledge a problem. (Tr. 143–144). Two of those employees were black and two were white. (Tr. 143–144).

27. Louis Gaetano, the Director of the Department, testified that the employees he helped enter Track Three are the ones who admitted to having a problem. (Tr. 147; Deposition p. 11).

28. However, Mr. Gaetano acknowledged that part of a substance abuser's problem can be denial of the problem. (Tr. 147; Deposition p. 11).

29. Three black males who had automobile accidents while under the influence of alcohol and in the course of their employment were given Track 3. All admitted their drinking problems. Two white males who did not have accidents were given Track Three. However, one was drunk and assaulted his foreman. He entered Track Three and was placed on one year probation. Before he concluded his probation he had a second offense and was again given Track Three because he acknowledged responsibility. (Tr. 199).

30. Philip Schingar, Assistant Director of Personnel, is responsible for the administration and coordination of services under the EAP. He testified that, in determining whether or not an employee should be in Track Three, there is no checklist prepared or published by the program. The decision rests on a case by case basis with the departments. There are no formally established guidelines to assist in making the determination. (Tr. 226; 233).

31. Some employees personally acquainted with the Director of the Department were permitted to make in-person presentations on their cwn behalf when facing discharge; others were not. (Tr. 183–184, 187, 200–201, 221).

(Commission's decision, pp. 6–9).

Based on the foregoing, it is clear that City consistently followed a policy of only admitting to its Track III program those employees who acknowledged a problem which could be addressed through the program and those employees who admitted responsibility for the conduct leading to their being disciplined. Here, it is undisputed that Foster denied having a drinking problem and denied responsibility for the accident he was involved in wherein a City owned vehicle was wrecked despite a blood alcohol reading of .115.

Given these factors, we do not find City's decision not to offer Foster admission into its Track III program to be arbitrary or a pretext for discrimination. City's policy of an employee having to admit a problem prior to being offered Track III was reasonable as City could not force employees who do not admit having a problem into the program nor could City expect successful results from employees refusing to acknowledge the need for a problem to be corrected through the program.

Based on the foregoing, we conclude that City terminated Foster's employment based on a legitimate nondiscriminatory reason and that City did not arbitrarily fail to offer Foster admission into its Track III program.[8] Accordingly, we reverse the trial court's order affirming the Commission.

8. Because of our disposition on these issues, we need not address the other arguments raised by

*ORDER*

AND NOW, this 29th day of December, 1995, the order of Court of Common Pleas of Allegheny County dated January 10, 1995 is reversed.

SMITH, J., did not participate in the decision in this case.